UNITED STATES of America

v.

Neil H. RHODES, d/b/a Straight Line Diamond Blades and Diamond Blades & Quarry Supply, Defendant.

No. 3:CR–95–0279.

United States District Court, M.D. Pennsylvania.

March 28, 1996.

Lorna N. Graham, Assistant United States Attorney, Scranton, PA, for the U.S.

Neil H. Rhodes, Defendant, proceeding pro se.

### MEMORANDUM

McCLURE, District Judge.

### BACKGROUND:

On November 9, 1995, a grand jury sitting in the Middle District of Pennsylvania returned an indictment charging defendant Neil H. Rhodes with offenses related to his failure to pay income and self-employment taxes and concealment of his income. On January 16, 1996, the jury returned a verdict of guilty with respect to each of the four counts of the indictment. Sentencing is scheduled for Monday, April 8, 1996. Rhodes is proceeding *pro se.*

Before the court are motions by Rhodes: for judgment of acquittal or, alternatively, for a new trial; to dismiss for failure to state an offense against the United States or for lack of subject matter jurisdiction; and for permission to file the motion for judgment of acquittal or new trial. Although Rhodes has not filed a brief in support of any of these motions, they will be addressed at this time because the legal authority on which Rhodes relies is set forth in the motions themselves. Also, the government already has filed a response to the motions.

### DISCUSSION:

### I. MOTION FOR EXTENSION OF TIME

A motion for judgment of acquittal pursuant to Fed.R.Crim.P. 29, when made after the entry of a verdict, "may be made or renewed within 7 days after the jury is discharged or within such further time as the court may fix during the 7-day period." Rule 29(c). A motion for a new trial based on any ground other than newly discovered

evidence "shall be made within 7 days after the verdict or finding of guilty or within such further time as the court may fix during the 7–day period." Fed.R.Crim.P. 33. The time period established by Rule 33 is jurisdictional in nature, and the district court has no authority to extend the time when no motion is filed within the 7–day period. *United States v. Coleman,* 811 F.2d 804, 807 (3d Cir.1987) (citing, *inter alia, United States v. Smith,* 331 U.S. 469, 474–475, 67 S.Ct. 1330, 1332–33, 91 L.Ed. 1610 (1947)), *cert. denied,* 490 U.S. 1070, 109 S.Ct. 2074, 104 L.Ed.2d 638 (1989).

■ In *United States v. Giampa,* 758 F.2d 928, 936 n. 1 (3d Cir.1985), the Third Circuit held that a judgment of acquittal may be made *sua sponte* by the district court under its inherent authority after the time period elapses. *See also Coleman* at 807; *United States v. Wright–Barker,* 784 F.2d 161, 170 n. 8 (3d Cir.1986). We see no basis for such action here. First, any question as to the validity of our holdings may be raised by Rhodes on appeal to the Third Circuit. More important is the lack of merit in the argument proffered by Rhodes.

■ Rhodes argues, based on language taken out of context from *Eisner v. Macomber,* 252 U.S. 189, 207, 40 S.Ct. 189, 193, 64 L.Ed. 521 (1920), to the effect that "income" under the Sixteenth Amendment is limited to profit proceeding from property. Actually, the Supreme Court held that income is "gain derived from capital, from labor, or from both combined, provided it be understood to include profit gained through a sale or conversion of capital assets, ..." *Id.* at 207, 40 S.Ct. at 193 (internal quotations, citation omitted). The discussion centered on gain from capital because the gain at issue was in the form of stock dividends. *Id.* at 208, 40 S.Ct. at 193. Rhodes argues that the Supreme Court was clarifying what is "gain"; actually, it was clarifying what is "gain derived from capital." Gain from labor was not at issue, and *Eisner* is inapposite.

Rhodes' argument that he is not a "person" subject to the Internal Revenue Code will be discussed, and rejected, below.

In this case, the jury returned a verdict and was discharged on January 16, 1996.

Any motions under Rule 29(c) and Rule 33 were due on or before January 25, 1996, excluding the intervening weekend from the 7–day period. Rhodes filed his motions on March 19, 1996, well after the prescribed period had elapsed. The court is without jurisdiction to extend the time for filing a Rule 33 motion, and no argument of merit supporting a motion for judgment of acquittal appears. Exercise of our inherent authority to enter a judgment of acquittal is unwarranted. Rhodes' motion for permission to file a motion for judgment of acquittal or for a new trial will be denied. Based on that ruling, Rhodes' motion for a judgment of acquittal or for a new trial will be denied.

## II. MOTION TO DISMISS

Rhodes moves to dismiss the indictment under Fed.R.Crim.P. 12(b)(2), which permits the court to hear a motion to dismiss an indictment that fails to show jurisdiction in the court or to charge an offense at any time during the pendency of the proceedings.

■ In this instance, Rhodes was charged under 26 U.S.C. § 7201, which makes it a felony to willfully evade the payment of any tax imposed under Title 26 of the United States Code. As has previously been pointed out to Rhodes, crimes defined within the Internal Revenue Code, specifically Chapter 75 of Title 26 of the Internal Revenue Code, are offenses against the United States over which a federal district court has jurisdiction under 18 U.S.C. § 3231. Tax evasion is properly a subject for the exercise of federal power under Article I, § 8 and the Sixteenth Amendment to the Constitution of the United States. *United States v. Isenhower,* 754 F.2d 489, 490 (3d Cir.1985). The authority of Congress to confer jurisdiction on federal courts is well-established. *W.G. v. Senatore,* 18 F.3d 60, 64 (2d Cir.1994) (citing *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 173–180, 2 L.Ed. 60 (1803); *Bender v. Williamsport Area School District,* 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986)).

Rhodes makes two arguments in his motion to dismiss the indictment. The first is that the income he received from his business was not taxable income under Title 26.

Second, he argues that he is not a "person" subject to taxation.

### A. "Person"

■ The latter argument is easily addressed. An individual is a person under the Internal Revenue Code. *United States v. Sloan*, 939 F.2d 499, 500–501 (7th Cir.1991), *cert. denied*, 502 U.S. 1060, 112 S.Ct. 940, 117 L.Ed.2d 110, *reh'g denied*, 503 U.S. 953, 112 S.Ct. 1518, 117 L.Ed.2d 654 (1992). *See also* 26 U.S.C. § 1 (imposing an individual income tax). The remainder of Rhodes' argument in this respect relates to his duty to take action under the Internal Revenue Code, and will be discussed below.

### B. Sufficiency of the Indictment

■ Rhodes' argument regarding taxable income goes to the sufficiency of the indictment.

> [A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs the defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.

*United States v. Bailey*, 444 U.S. 394, 414, 100 S.Ct. 624, 636, 62 L.Ed.2d 575 (1980) (citation, quotation marks omitted). *See also United States v. Scanzello*, 832 F.2d 18, 22 (3d Cir.1987) (applying same standard).

■ The elements of the offense charged, i.e. tax evasion under § 7201, are:

> ... willfulness; the existence of a tax deficiency ...; and an affirmative act constituting an evasion or attempted evasion of the tax....

*Sansone v. United States*, 380 U.S. 343, 351, 85 S.Ct. 1004, 1009, 13 L.Ed.2d 882 (1965) (citations omitted). *See also Sloan* at 501 (reciting same elements).

■ Each count of the indictment alleges a tax deficiency, in approximately the following amounts: Count I—$18,000.00; Count II—$43,000.00; Count III—$60,000.00; and Count IV—$90,000.00. Each count alleges that Rhodes "did willfully attempt to evade and defeat the said income and self employment tax due and owing by him to the United States of America ..." Indictment at 1, 3, 5, 7. Finally, the indictment alleges that Rhodes committed affirmative acts, including: failing to make an income tax return, failing to pay the taxes; concealing his correct income by such means as extensive use of cash, handling business affairs in such a way as to avoid making records, and maintaining duplicate invoices; purchasing interests in the Turks and Caicos Islands to divert and conceal income; and causing title in a personal residence to be transferred to offshore trusts, and causing false returns to be filed. All of the elements of a violation of § 7201 are set forth in the indictment.

The indictment fairly informed Rhodes of the charges which he was required to defend. The elements of the offense and the conduct constituting the offense are set forth. Each count sets forth the tax deficiency for a specific year. And the type of tax (income and self-employment) are stated. The information set forth in the indictment was sufficient under *Bailey*. We note as well that the indictment was sufficient in this respect under Fed.R.Crim.P. 7(c)(1).

Finally, Rhodes may plead a conviction to bar any future prosecution for the same events. The tax year, type of tax, and means of evading the tax were sufficiently identified to eliminate the possibility of double jeopardy.

Based on the foregoing, the indictment was sufficient under the standard set forth in *Bailey*.

■ Rhodes' argument is that his income is not subject to any tax imposed under Title 26. He quotes *Brushaber v. Union Pacific Railroad Co.*, 240 U.S. 1, 17, 36 S.Ct. 236, 241, 60 L.Ed. 493 (1915), to the effect that "[t]axation on income is an excise." Actually, *Brushaber* reads:

> Nothing could serve to make this clearer than to recall that in the Pollock Case, in so far as the law taxed incomes from other classes of property than real estate and invested personal property, that is, income from "professions, trades, employments, or vocations" ( [*Pollock v. Farmers' Loan & Trust Co.*] 158 U.S. [601] 637 [15 S.Ct. 912, 920, 39 L.Ed. 1108 (1895) ] ) its validity

was recognized; indeed, it was expressly declared that no dispute was made upon that subject, and attention was called to the fact that taxes on such income had been sustained as excise taxes in the past.

*Id.* This quotation appears in a discussion of the historical context of the passage of the Sixteenth Amendment. The point being made is that, prior to the passage of the Sixteenth Amendment, any tax was viewed as either a "direct" tax, such as a property tax, or a duty, impost, or excise. Under the Constitution as originally drafted, any direct tax was subject to the requirement of apportionment. *Id.* at 13, 36 S.Ct. at 239 (citing U.S. Const. art. I, § 2, cl. 3; art. 1 § 9, cl. 4). A duty, impost, or excise was subject to the rule of uniformity. *Id.*

In *Pollock v. Farmers' Loan & Trust Co.*, 157 U.S. 429, 15 S.Ct. 673, 39 L.Ed. 759 (1895), the Supreme Court was faced with the question of taxation without apportionment upon carriages used for conveying persons. The tax was held to be within the class of duties, imposts, and excises, not subject to apportionment. *Brushaber*, 240 U.S. at 14, 36 S.Ct. at 240. The result of *Pollock* and other opinions of the Supreme Court was that the limitation on a "direct tax" in the constitutional sense came to refer to a proscription against a burden by taxation of accumulations of property, both real and personal, except subject to the regulation of apportionment. *Brushaber* at 16, 36 S.Ct. at 240. Congress at that time could, in fact, impose income taxes, subject to apportionment; in other words, income taxes could be imposed, but not when they amounted to a direct tax as defined above. *Id.* at 16–17, 36 S.Ct. at 240–241.

The Sixteenth Amendment was passed specifically to eliminate the need to subject *any* income tax to the requirement of apportionment:

This is the text of the Amendment:

'The Congress shall have power to lay and collect taxes on incomes, from whatever source derived, without apportionment among the several states, and without regard to any census or enumeration.'

It is clear on the face of this text that it does not purport to confer power to levy income taxes in a generic sense,—an authority already possessed and never questioned,—or to limit and distinguish between one kind of income taxes and another, but that the whole purpose of the Amendment was to relieve all income taxes when imposed from apportionment from a consideration of the source whence the income was derived. Indeed, in the light of the history which we have given and of the decision in the Pollock Case, and the ground upon which the ruling in that case was based, there is no escape from the conclusion that the Amendment was drawn for the purpose of doing away for the future with the principle upon which the Pollock Case was decided; that is, of determining whether a tax on income was direct not by a consideration of the burden placed on the taxed income upon which it directly operated, but by taking into view the burden which resulted on the property from which the income has derived, since in express terms the Amendment provides that income taxes, from whatever source the income may be derived, shall not be subject to the regulation of apportionment. . . .

*Id.* at 17–18, 36 S.Ct. at 241–242.

 Succinctly stated, *Brushaber* holds that Congress had, even before the Sixteenth Amendment was passed, the authority to tax income. If the income tax was a direct tax in the constitutional sense, it was subject to the requirement of apportionment. The Sixteenth Amendment eliminated the requirement of apportionment as it relates to "taxes on incomes, from whatever source derived."[1]

---

1. The distinction between direct taxes and other forms of taxation, such as an excise, continue to have effect. In *United States v. Wells Fargo Bank*, 485 U.S. 351, 355, 108 S.Ct. 1179, 1182, 99 L.Ed.2d 368 (1988), the Supreme Court reviewed the distinction for estate tax purposes, concluding that an estate tax is an excise because it taxes the transfer of property rather than the property itself. The latter form of taxation, i.e. on the property itself, is a direct tax. The distinction was important because property subject to a general exemption from "all taxation" is not thereby exempt from excise taxes such as the estate tax. Historically, "when Congress has ex-

Under Title 26, taxable income is gross income less enumerated deductions. 26 U.S.C. § 63(a), (b). Gross income is defined as follows:

Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items:

(1) Compensation for services, including fees, commissions, fringe benefits, and similar items;

(2) Gross income derived from business;

(3) Gains derived from dealings in property;

(4) Interest;

(5) Rents;

(6) Royalties;

(7) Dividends;

(8) Alimony and separate maintenance payments;

(9) Annuities;

(10) Income from life insurance and endowment contracts;

(11) Pensions;

(12) Income from discharge of indebtedness;

(13) Distributive share of partnership gross income;

(14) Income in respect of a decedent; and

(15) Income from an interest in an estate or trust.

26 U.S.C. § 61(a). Specific items otherwise are included in or excluded from "gross income." *See* 26 U.S.C. § 61(b) (cross-reference to items included and excluded). A tax on the taxable income of individuals is imposed under 26 U.S.C. § 1. An additional tax is imposed under 26 U.S.C. § 1401 on self-employment income, as defined in 26 U.S.C. § 1402.

It is clear from the above that income and self-employment taxes are taxes imposed under Title 26. A willful attempt to evade or defeat these taxes or payment of these taxes

is a violation of § 7201. Under the Sixteenth Amendment, an income tax may fall under the category of a direct tax or under the category of a duty, impost, or excise. In either case, the income is subject to taxation without apportionment, consistent both with the Sixteenth Amendment and Title 26. Rhodes' argument that the taxing of his income is an "excise" is immaterial to a finding that he violated § 7201.

■ At trial, the evidence showed that Rhodes earned substantial income from the sale of diamond saw blades to the operators of stone quarries. Apparently, these business dealings also involved the process of reconditioning the blades for further use. As such, Rhodes clearly earned gross income under § 61(a), and the evidence showed that there was taxable income, as derived during trial by a tax expert. All of this is consistent with the allegations in the indictment that Rhodes had received a taxable income, and that he owed income and self-employment income taxes to the United States. Contrary to his assertions, Rhodes was a person under a duty to report his income and to pay the tax thereon.

Rhodes' motion to dismiss the indictment will be denied.

### III. CONCLUSION

Rhodes' motion for judgment of acquittal is untimely, and an exercise of our inherent authority to enter judgment of acquittal is unwarranted. The court is without authority to consider Rhodes' motion for a new trial because the time limitation imposed under Rule 33 is jurisdictional in nature. Rhodes' motion for permission to file a motion under Rules 29 and 33 will be denied, and the Rule 29/33 motion itself will be denied.

Rhodes is a "person" subject to the duties imposed under the Internal Revenue Code, and the purported classification of a tax on Rhodes' income as an excise is immaterial to the duty to pay income and self-employment

empted property from estate taxation it has generally adverted explicitly to that tax, rather than generically to 'all taxation.' " *Id.* at 356, 108 S.Ct. at 1182. The distinction does not impact

the conclusion that Rhodes' income, excise or otherwise, is subject to taxation under the Constitution and the Internal Revenue Code.

taxes thereon. Rhodes' motion to dismiss will be denied.