Marvin B. MORGANBESSER, Douglas Bleiler, Wayne Gyenizs, James N. McParland and International Union of Operating Engineers Local Union No. 478, A–C–D–E Pension Plan, Appellees,

v.

UNITED STATES of America, Appellant.

Nos. 230, 353, Dockets 92–6110, 92–6118.

United States Court of Appeals, Second Circuit.

Argued Nov. 25, 1992.

Decided Jan. 19, 1993.

ton, Acting Asst. Atty. Gen., Gary R. Allen and Kenneth L. Greene, Attys., Tax Div., Dept. of Justice, and Albert S. Dabrowski, U.S. Atty., New Haven, CT, on the brief), for appellant.

Before: TIMBERS, MINER, and McLAUGHLIN, Circuit Judges.

TIMBERS, Circuit Judge:

Appellant, the United States, appeals from a summary judgment entered in the District of Connecticut, Peter C. Dorsey, *District Judge*, finding appellees exempt from taxation because their pension plan qualifies as a labor organization under Internal Revenue Code (Code) § 501(c)(5).

Appellant asserts that the type of trust here involved can neither be considered a labor organization for the purposes of § 501(c)(5), nor eligible for the exemption for trusts which meet the requirements of the Employee Retirement Income Security Act of 1974 (ERISA). Appellees cross-appeal from the court's order striking affidavits they submitted to support their claim that the Internal Revenue Service (IRS) abused its discretion in not applying the ERISA exemption to their plan.

We reject appellant's assertion that the plan is not a labor organization for the purposes of § 501(c)(5). Accordingly, we find it unnecessary to reach the issue of whether the ERISA exemption applies, or the issue on the cross-appeal of whether the affidavits were admissible.

## I.

We summarize only those facts and prior proceedings believed necessary to an understanding of the issues raised on appeal.

The International Union of Operating Engineers Local Union 478, A–C–D–E Pension Plan (trust) was established in 1958 as a result of a collective bargaining agreement between Local Union 478, A–C–D–E, I.O.U.E. (union), and a number of construction firms. The board of trustees which administers the trust is comprised equally of employer and employee representatives. It is a benefit pension plan, funded solely

K. Peter Schmidt, Washington, DC (Philip W. Horton, Vivian L. Hobbs, and Arnold & Porter, Washington, DC; Lawrence H. Lissitzyn, and Reid & Reige, Hartford, CT, on the brief), for appellees.

Robert W. Metzler, Atty., Tax Div., Dept. of Justice, Washington, DC (James A. Bru-

by employers. It covers approximately 4,000 construction workers.

Before ERISA was enacted, the trust was granted an exemption by the IRS as a qualified pension plan. When ERISA was enacted in 1974, it imposed more stringent rules on the trusts which sought exemption from tax. The trust adopted a number of amendments between 1976 and 1984. It did not request a letter from the IRS regarding its tax exempt status until 1984. The IRS determined that the trust did not satisfy six ERISA requirements, and therefore was not exempt for fiscal years 1983, 1984, or 1985. The IRS did determine that, if the trust retroactively adopted these amendments, it could become exempt for fiscal years 1984 and 1985 only.

The trust adopted these amendments, but the IRS determined that the trust still was liable for $3,131,409.44 in taxes and interest for 1983. The trust paid the 1983 taxes and filed an administrative claim for a refund of this amount. The IRS disallowed this claim.. The trust accordingly commenced the instant action to recover the refund.

Since the facts were not in dispute, both parties moved for summary judgment in the district court. The trust asserted that it did meet all the requirements for tax exempt status under ERISA before adopting the amendments. Alternatively, the trust asserted that, even if the trust was not exempt before, the IRS abused its discretion by refusing to grant the trust retroactive relief for fiscal year 1983. Finally, the trust asserted that, even if it was not a qualified plan for an ERISA exemption, it was exempt as a "labor organization" pursuant to Code § 501(c)(5). Appellant challenged all of these claims.

The court granted the trust summary judgment, finding the trust exempt as a labor organization under § 501(c)(5). In making this determination, the court found it unnecessary to address the issue of the ERISA exemption or the abuse of discretion allegation.

Appellant appeals from the summary judgment in favor of the trust, claiming that the trust is not a labor organization under § 501(c)(5). The trust cross-appealed from the order striking the affidavits it submitted in support of its claim that the IRS abused its discretion in not applying the amendments retroactively.

## II.

■ Section 501(c)(5) of the Code exempts labor organizations from taxation. The Code provides no definition of what constitutes a "labor organization." Nor is there any significant case law in point. The regulation promulgated under this section of the Code is only a bit more expansive, stating that a labor organization can have no net earnings benefitting any member and its object must be to better the working conditions of those engaged in labor. Treas.Reg. § 1.501(c)(5)–1(a) (1960). There is no clear test to determine what in fact is a labor organization. In one of the only cases in which the term has been interpreted—a case both old and of doubtful authority—the court held that it "bespeaks a liberal construction ... [including] groups which are ordinarily organized to protect and promote the interests of labor." *Portland Coop. Labor Temple Ass'n v. Commissioner*, 39 B.T.A. 450, 455 (1939).

Appellant, in attempting to support its assertion that a labor organization cannot be an entity when it is only a pension fund, cites a treatise which states that, "[A] tax-exempt organization must have authority to represent or speak for its members in matters relating to their employment, such as wages, hours of labor, conditions, or economic benefits." Bruce R. Hopkins, *The Law of Tax–Exempt Organizations* 617 (6th ed. 1992). This definition, however, does not necessarily preclude a pension fund from an exemption. The trust does confer the economic benefits of a pension fund for employees. Furthermore, half of the board of the trust are employees, providing significant union representation.

Appellant concedes that a labor organization is not limited to a labor union, but asserts that revenue rulings indicate that they "must either actively further the goals of representing workers, bettering

their working conditions ... or, at a minimum, be controlled by an organization (such as a labor union) carrying on such activities." Since the trust is a jointly administered, employer-funded plan, appellant concludes that it is not sufficiently similar to a union to make it a labor organization.

Appellant's assertion ignores the fact that half of the members of the trust's board are employees, and the union jointly established the trust and jointly administers the plan. This nexus between the trust and the union is crucial in showing that the trust is a labor organization.

Although there is no official definition, the IRS has not been silent about its criteria as to what constitutes a labor organization. It has spoken through a series of General Counsel Memoranda (GCM) and Revenue Rulings. One relevant GCM states that:

> "[W]e have always considered it significant that the organization was in some way connected with more traditional types of labor organizations.... [W]e think one of the most reliable indicators of a 'labor organization' is that it is ... formed as a result of ... representation [of a union], or is connected with or supplements or supports in some way organizations which do perform that role."

GCM 37942 (April 27, 1979) (citations omitted).

The trust was formed as a result of a collective bargaining agreement negotiated by the union to supplement the function of the union in providing employees' pension benefits. The IRS's own interpretation therefore suggests that the trust can be classified as a labor organization.

■ Appellant asserts that the trust cannot rely on GCMs because they have no precedential value. *Disabled American Veterans v. Commissioner*, 942 F.2d 309, 315 n. 5 (6 Cir.1991). While this may be true, GCMs are helpful in interpreting the Tax Code when "faced with an almost total absence of case law." *Herrmann v. E.W. Wylie Corp.*, 766 F.Supp. 800, 802–03 (D.N.D.1991). In *Herrmann*, the court

would not rely on the GCM to interpret the plan involved because the GCM was fact specific to the plan for which it was written. The court, however, did rely on its interpretation of the Code section involved because it assumed the IRS would insist upon a uniform interpretation of the section. Here, where there is no case law in point, it is arguably permissible to use GCMs to *instruct* the court on how the IRS itself interprets § 501(c)(5), since they constitute the only real guidance as to what the IRS considers a labor organization for the purposes of a § 501(c)(5) exemption.

Appellant argues that a pension plan cannot by definition be a labor organization. It claims that, because the Code does not define the term labor organization and because there is so little case law on this matter, one must apply the "commonly understood" definition of this term. Appellant then goes on to cite *Black's Law Dictionary* at 874–75 (6th ed. 1990) and *Webster's Third New International Dictionary* at 1260 (1986) for the common definition of this term. In making this assertion, appellant ignores the fact that the IRS itself has expanded on the definition set forth in the Code.

In its brief before us, appellant, without citing any relevant authority, states that "[T]he term 'labor organization' does not include an entity that is a pension plan...." This is directly contrary to the IRS's pronouncement in GCM 35862 (June 20, 1974) which stated that a pension plan is an integral part of a union's activities and an appropriate labor organization undertaking. Although the pension plan here involved was employer-funded and the plan referred to in the GCM was union-funded, the IRS's statement shows that the activities of the trust are appropriate for a labor organization.

Furthermore, the fact the trust is employer-funded is not fatal. GCM 37942 stated that "many of today's labor organizations are very heavily funded by employers, particularly as concerns their beneficiary associations." GCM 37942 at n. 10 (April 27, 1979). This GCM cites another GCM which stands for the proposition that

exempt organizations can be entirely funded by employers. GCM 37726 (October 20, 1978). GCM 37942 sets forth no reason why outside funding would be inappropriate, unless the funding was to be by persons whose interests are not likely to be connected with the purposes of the labor organization. This is not so in the instant case. The employers here have a strong interest in funding the trust which was created in a collective bargaining agreement with the union. That provided the requisite connection.

In view of the dearth of case law in this area, the only real guidance for what qualifies as a labor organization is found in the GCMs issued by the IRS. While we are not giving precedential value to the GCMs, in this case of first impression it becomes necessary to rely on them for interpretive guidance. If the IRS finds that the term labor organization is too broad, then, through future GCMs or regulations, it should restrict the definition, but it should not do so retroactively.

Appellant also asserts that the trust cannot be a labor organization because it is jointly administered by employers and employees. There are revenue rulings, however, which have allowed entities which carry out the function of a labor organization to be jointly administered by employers and employees and still qualify as a labor organization for the purposes of a § 501(c)(5) exemption. Revenue Ruling 59–6, 1959–1 C.B. 121; Revenue Ruling 75–473, 1975–2 C.B. 213.

These factors support the view that the trust in fact is a labor organization, qualifying for a § 501(c)(5) exemption. We wish to address one concern raised by appellant about exempting the trust from taxation. It may be problematic to allow a pension plan, such as the trust, to avoid ERISA requirements and still claim an exemption as a labor organization. This could cause other plans to execute an end run around ERISA. This "floodgates" argument, however, does not mitigate the fact that the IRS's prior pronouncements support the view that the trust is a labor organization; and if the GCMs are to be given any consideration, it would be unjust to apply retroactively standards which contradict prior IRS pronouncements.

■ Appellant's assertion that allowing the trust to be exempt under § 501(c)(5) would undermine the legislative intent of ERISA strikes us as a weak one. Appellant says that the legislative history of ERISA illustrates that the tax exemption was enacted to assure proper protection for employee benefits. While this may be true, it does not automatically follow that a pension plan which does not qualify for an ERISA exemption is precluded from all exemptions. A plan can qualify for more than one exemption. Treas.Reg. § 1.501(c)(4)–1(a)(2)(i) (1960). Indeed, an ERISA exemption is more advantageous than a § 501(c)(5) exemption. It therefore is unlikely that plans will be encouraged to circumvent the ERISA requirements.

■ Appellant further asserts that the court erred in placing the burden of proof on appellant to show that the trust was not a labor organization instead of requiring the trust to prove that it was a labor organization. The trust, however, did sustain its burden in proving that it was a labor organization as a matter of law. Summary judgment accordingly was properly granted. Appellant, in opposing the motion, had the burden of proving that there was a genuine issue for trial. Fed.R.Civ.P. 56(e).

Since we hold that the trust is exempt as a labor organization, we find it unnecessary to reach the issue of whether the court improperly struck the affidavits in support of the trust's claim that the IRS abused its discretion in not retroactively applying the amendments to enable the trust to qualify for an ERISA exemption.

### III.

To summarize:

We hold that the court properly held that the trust meets the requirements of a labor organization and qualifies for an exemption under § 501(c)(5) of the Code. Accordingly, it is not necessary to reach the issue raised on the cross-appeal of whether the court improperly struck the affidavits in

support of the trust's claim that the IRS abused its discretion in not applying the amendments retroactively.

Affirmed.

MINER, Circuit Judge, dissenting:

Because I am of the opinion that the Pension Plan has not carried its burden of proving that it is an exempt labor organization within the meaning of I.R.C. § 501(c)(5), *see United States v. Wells Fargo Bank*, 485 U.S. 351, 354, 108 S.Ct. 1179, 1181, 99 L.Ed.2d 368 (1988) ("exemptions from taxation are not to be implied; they must be unambiguously proved"); *United States v. Stewart*, 311 U.S. 60, 71, 61 S.Ct. 102, 109, 85 L.Ed. 40 (1940), I respectfully dissent.

My colleagues rely heavily on two General Counsel Memoranda ("GCMs") to support their analysis. The principal memorandum to which they refer, Gen. Couns.Mem. 37,942 (Apr. 27, 1979) (available on WESTLAW, FTX–GCM database), 1978 IRS GCM LEXIS 180, at *22–23, included the following language:

> [W]e think [that] one of the most reliable indicators of a "labor organization" is that it is performing the traditional representational role of organized labor, or is formed as a result of such representation, or is connected with or supplements or supports in some way organizations which do perform that role. Each of the organizations which has been exempted previously under Section 501(c)(5) met this test.

It is noteworthy that the question giving rise to this memorandum was whether an organization funded by donations and income from fundraising events was exempt where its sole purpose was to accumulate and manage a retirement fund for certain municipal employees. *Id.* at *1. The question was answered in the negative, because the General Counsel "d[id] not believe an organization providing only monetary benefits, and performing no other labor activities, and which lacks the connection described above, qualifies under section 501(c)(5)." *Id.* at *23. It was not the source of the funding, but the lack of con-

nection to a traditional labor organization that caused the disqualification.

Another GCM, Gen.Couns.Mem. 35,862 (June 20, 1974 & Supp. June 29, 1978), 1974 IRS GCM LEXIS 498, was cited in GCM 37,942 and is referred to in the majority opinion. *See* maj. op. at 563–64. In its original version, GCM 35,862 set forth the General Counsel's opinion that a pension plan established and funded by a labor union and administered entirely by union representatives would qualify as a labor organization. As to that pension plan, the General Counsel opined that:

> a subsidiary of an exempt labor organization, though not itself technically qualified for exemption as a labor organization, may be granted exemption if it is operated as an integral part of the exempt activities of the parent labor organization and furthers the parent's exempt purposes.

*Id.* at *12. The supplement to that GCM provided the opinion that it was not necessary for the labor organization's activities to be an integral part of the union activities and that it was sufficient "that the organization be engaged in activities appropriate to an exempt labor union for it to qualify for exemption under Section 501(c)(5)." A revenue ruling proposed to reflect the views set forth in the supplement never was adopted.

The question raised in the supplement and in the proposed revenue ruling ultimately was resolved in the later-issued GCM 37,942:

> Although in the supplement to G.C.M. 35862, *supra*, we stated that it was not advisable to require that a labor organization's activities be "an integral part of the activities of a labor union," we did not intend to suggest by that statement that no connection of any kind with more traditional labor organizations was required.

Gen.Couns.Mem. 37,942, 1978 IRS GCM LEXIS 180, at *22. Aside from their lack of precedential value, *see Hernandez v. Commissioner*, 490 U.S. 680, 703 n. 13, 109 S.Ct. 2136, 2151 n. 13, 104 L.Ed.2d 766 (1989); *Disabled Am. Veterans v. Com-*

*missioner*, 942 F.2d 309, 315 n. 5 (6th Cir. 1991), the foregoing GCMs do not support an exemption for the pension plan in this case under § 501(c)(5). The memoranda require that there be some connection with a more traditional labor organization. There can be no such connection where, as here, a pension plan is funded totally by employers, is not controlled by a labor union but by an independent board of trustees composed of an equal number of employer and union representatives and does not support or supplement the union in any way. The fact that Local 478 negotiated for the establishment of the Plan does not provide the necessary connection. The Pension Plan is a wholly separate entity, and its activities are not a part of the activities of Local 478.

My colleagues refer to revenue rulings "which have allowed entities which carry out the function of a labor organization to be jointly administered by employers and employees and still qualify as a labor organization for the purposes of a § 501(c)(5) exemption." Maj. op. at 564. In Rev.Rul. 75–473, 1975–2 C.B. 213, an organization jointly controlled and funded by the union and the employers was formed to allocate work assignments among union members. The organization was ruled exempt because it carried on appropriate union activities "as a part of the proper activities of the parent organization, so that it is not merely an independent undertaking." *Id.* The Pension Plan in the case before us is not operated as part of the proper activities of Local 478, and is indeed an "independent undertaking." Other revenue rulings support the granting of the labor organization exemption only where the necessary connection with the traditional labor entity is demonstrated. *See, e.g.,* Rev.Rul. 77–46, 1977–1 C.B. 147 (savings plan established pursuant to collective bargaining agreement and administered by equal number of employer and employee representatives does not qualify); Rev.Rul. 77–5, 1977–1 C.B. 146 (exemption granted to trust funded and administered by employers to compensate steward under union's direct control); Rev.Rul. 59–6, 1959–1 C.B. 121, 123 (an entity that has "equal representation of

employers and employees ... is not within the usual meaning of a 'labor organization' ").

It seems to me that the entire congressional scheme must be examined to determine whether the pension plan here falls within the undefined "labor organization" exemption of § 501(c)(5). That scheme calls for employer-provided pension plans to be exempt from tax only if they meet the stringent requirements of ERISA. If an entity established to pay retirement benefits could obtain an exemption as a labor organization under § 501(c)(5) rather than under § 401, there would be little reason to comply with the more stringent requirements, and the congressional scheme would be undermined. *Cf. Canton Police Benevolent Ass'n of Canton, Ohio v. United States,* 844 F.2d 1231, 1236 (6th Cir.1988).

When ERISA was enacted in 1974, relevant portions of the Internal Revenue Code were integrated with other statutory provisions affecting pension plans administered by the Department of Labor as part of a single comprehensive scheme. Because pension benefits promised to employees were not being adequately protected, *see* 29 U.S.C. § 1001(a) (1988), ERISA was seen as a comprehensive remedial statute designed to protect those benefits. *See Connolly v. Pension Benefit Guar. Corp.,* 475 U.S. 211, 214, 106 S.Ct. 1018, 1020, 89 L.Ed.2d 166 (1986). Congress considered it necessary that the new ERISA requirements be complied with before tax exemptions would be allowed. *See* S.Rep. No. 383, 93d Cong.2d Sess. 33 (1974), *reprinted in* 1974 U.S.C.C.A.N. 4890, 4918; H.R.Rep. No. 807, 93d Cong.2d Sess. 31 (1974), *reprinted in* 1974 U.S.C.C.A.N. 4639, 4670, 4697. The "labor organization" exemption already was in place when ERISA was enacted, but there is no indication that it was to serve as an alternative to the ERISA–provided exemption. Congress clearly intended that employer-funded pension plans meet the requirements of ERISA in order to gain tax exemptions. We should be "reluctant to tamper with an enforcement scheme crafted with such evident care as the one in ERISA." *Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 147, 105 S.Ct. 3085, 3093, 87 L.Ed.2d 96 (1985).

My colleagues say that "[i]t ... is unlikely that plans will be encouraged to circumvent the ERISA requirements" by claiming the labor organization exemption because "an ERISA exemption is more advantageous than a § 501(c)(5) exemption." Maj. op. at 564. While it is true that where a plan fails to qualify for an ERISA exemption, an employer may not immediately deduct its contributions and employees must immediately report contributions made on their behalf as income, *see* I.R.C. §§ 402(b), 404(a) (1988); *Hollingshead v. Burford Equip. Co.*, 747 F.Supp. 1421, 1434 (M.D.Ala.1990), the loss of the tax exemption is the only consequence for the Plan itself. That loss is the principal enforcement tool designed to compel compliance with the ERISA scheme.

On remand, I would have the district court address the issues it found unnecessary to consider because of its determination that the Plan was a labor organization exempt under § 501(c)(5); whether the Plan met all the requirements for tax exempt status under ERISA, *see* I.R.C. § 401(a); and whether, if the Plan failed to meet the requirements, the IRS abused its discretion by not granting full relief from disqualification. With regard to the latter issue, I would allow consideration of the seventeen affidavits previously stricken by the district court.