STICHTING PENSIOENFONDS VOOR DE GEZONDHEID, GEESTELIJKE EN MAATSCHAPPELIJKE BELANGEN, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civil Action No. 95–01568 (CRR).

United States District Court, District of Columbia.

Dec. 9, 1996.

K. Peter Schmidt, Philip W. Horton and Michelle B. O'Connor, Arnold & Porter, Washington, DC, for Plaintiff.

Stuart D. Gibson, and Samuel A. Mitchell, Trial Attorneys, Tax Division, United States Department of Justice, for Defendant.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

The plaintiff in the above-entitled cause, Stichting Pensioenfonds Voor De Gezondheid, Geestelijke En Maatschappelijke Belangen ("Health Worker's Fund" or the "Fund"), brought this action for a refund of taxes pursuant to Internal Revenue Code ("I.R.C.") § 7422 and 28 U.S.C. § 1346 paid for the taxable year 1993. The sole issue in dispute is whether the plaintiff is exempt from taxation for income earned in 1993 because it qualifies as a "labor organization" under I.R.C. § 501(c)(5). Currently pending before the Court are the parties' cross motions for summary judgment. Upon consideration thereof, the parties' oppositions thereto, the entire record in this case, and for the reasons set forth below, the Court shall deny the plaintiff's Motion for Summary Judgment, and shall grant the defendant's Motion for Summary Judgment.

## BACKGROUND

In this action, the Health Worker's Fund, a Dutch multiemployer pension plan for health care workers, seeks a refund of 1993 U.S. income taxes in the approximate amount of $8.5 million, on the basis of its asserted exemption from U.S. income taxes under § 501(c)(5) of the Internal Revenue Code of 1986, as amended.

The Fund was formed in June, 1969 as a result of negotiations between the Dutch National Hospital Employers' Association ("Hospital Association") and the three principal labor unions representing workers in the hospital industry (the "Unions"). At that time, the Association and the Unions adopted the Fund's articles of association, which established overall control of the Fund by a

Board of Directors. Later that same year, the Association and the Unions jointly filed an application with the Dutch Minister of Social Affairs and Employment for compulsory treatment—requiring participation in a pension fund by all employers and employees in a defined industry or industry sector—which was granted. As of December 31, 1993, there were fourteen health and social welfare sectors subject to compulsory treatment under the Fund.

The Fund collects pension fund contributions, which are paid by both employers and employees (although the employee share is collected from employers, who withhold such contributions from the workers' pay); manages its investments; and pays benefits to those participants who are entitled to receive them. The Funds investments include common stocks of United States companies and mutual funds, which are held by United States banks and other financial institutions acting as custodians for the Fund. For the 1993 taxable year, such custodial institutions timely withheld and paid to the U.S. Treasury $8,567,408.87 in U.S. income taxes on dividends paid on stocks and mutual funds held by such institutions for the Fund.

The Fund is governed by a Board of Directors, which has the ultimate responsibility for the management of the Fund and for setting Fund policy. The Board has twelve voting directors. As required by Dutch law, half the voting directors are appointed by the three principal employer organizations representing employer institutions in the relevant industry sectors, and half are appointed by the three principal unions representing employees in the relevant industry sectors. All twelve directors have equal voting power. There is an independent non-voting Chairman. On all policy issues, the employer and union directors must reach an agreement, or no decision can be made by the Board.

## DISCUSSION

### I. SUMMARY JUDGMENT IS APPROPRIATE BECAUSE THERE IS NO GENUINE ISSUE AS TO ANY MATERIAL FACT.

In order for the Court to grant summary judgment under Rule 56, the moving party must demonstrate that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). In determining if summary judgment is appropriate, the Court must view all of the evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). That party, however, "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586, 106 S.Ct. at 1356. If no rational fact finder could find in the non-movant's favor, there is no material issue of fact and summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986).

In this case, there are no material facts in dispute. By their Stipulation, filed with this Court on May 15, 1996, the parties have expressly stipulated to virtually all material facts. The remaining material facts, not set forth in the Stipulation, are not in dispute either. Therefore, because only matters involving issues of law are in dispute, summary judgment is appropriate.

### II. THE FUND IS NOT ENTITLED TO A REFUND FOR INCOME TAXES PAID FOR THE TAXABLE YEAR 1993 BECAUSE IT DOES NOT QUALIFY AS A LABOR ORGANIZATION UNDER I.R.C. § 501(c)(5).

The Fund is not entitled to a refund of the income taxes it paid for 1993 because it has failed to prove unambiguously that it qualifies for the tax exemption as a "labor organization" under § 501(c)(5), which is the only basis it has asserted for a tax exemption. *See United States v. Wells Fargo Bank,* 485 U.S. 351, 354, 108 S.Ct. 1179, 1181–82, 99 L.Ed.2d 368 (1988) (holding that organization must prove "unambiguously" that it qualifies for a tax exemption).

### A. The Language and Legislative History of § 501(c)(5) Does Not Suggest That the Plaintiff Qualifies for Exemption as a "Labor Organization."

Section 501(c)(5) of the Internal Revenue Code exempts labor organizations from taxa-

tion. The statute itself, though, does not provide a definition for the term "labor organization," and, therefore, the Court must look beyond the plain language of § 501(c)(5) to determine whether the Fund is a labor organization as that term is understood under § 501(c)(5).

Neither does the legislative history of § 501(c)(5) and other relevant tax statutes provide the Court much help in determining a useful definition of labor organizations for purposes of applying § 501(c)(5). Congress first exempted labor organizations from the general corporate tax levied by the Tariff Act of 1909. Tariff Act of 1909, ch. 6, § 38, 36 Stat. 113. The phrase "labor organization" was included in the bill sent to the Senate Finance Committee, but the bill emerged from committee without it. 44 Cong.Rec. 4148 (1909). The committee found the phrase to be unnecessary, because labor organizations were believed to be covered by the wording "fraternal beneficiary societies, ... operating under the lodge system and providing for the payment of life, sick, accident, and other benefits." 44 Cong.Rec. at 4148–49.

Several labor unions, however, were concerned that the existing "beneficiary societies" language did not cover them since they did not provide life, sick, accident, and other benefits to their members. *See, e.g.,* 44 Cong.Rec. at 4154 (concern of the Brotherhood of Local Firemen that their organization would not be exempt). The phrase "labor organization" consequently was added to the statute to cover organizations that do not "make such provisions, and are not organized for those purposes." 44 Cong.Rec. at .4155. When the first income tax was instituted in 1913 under the Sixteenth Amendment, the phrase "labor organizations" was included with exempt entities. Tariff Act of 1913, ch. 16, § II(G), 38 Stat. 172. This language has remained unchanged in every major revision since that time. *See* J. Thomas Nolan, Can a Pension Plan be a Labor Organization, 47 Tax Law. 501, 512 n. 20.

While far from determinative, this legislative history provides no support for the Fund's claim that the phrase "labor organization" encompasses a pension fund that exists only to provide retirement benefits for its members. In fact, the legislative history shows that the term "labor organizations" was added to the 1909 Tariff Act to cover entities that did not provide monetary benefits, but served other functions concerning the welfare of workers. The drafters more likely found that the provision of monetary benefits was not a defining function of a labor organization, but, rather, was an activity engaged in by some labor organizations and not by others. On the other hand, the legislative history equally fails to prove that an association which only provides monetary benefits to its members cannot be a tax-exempt labor organization. The legislative history thus provides little help in defining "labor organizations."

### B. The Regulation Promulgated by the IRS Under § 501(c)(5) Does Not Support the Plaintiff's Claim That it is a Tax-exempt Labor Organization.

The regulation promulgated by the IRS under this statute provides a brief description of a labor organization. It states:

> The organizations contemplated by section 501(c)(5) as entitled to exemption from income taxation are those which:
>
> (1) Have no net earnings inuring to the benefit of any member, and
>
> (2) Have as their objects the betterment of conditions of those engaged in such pursuits, the improvement of the grade of their products, and the development of a higher degree of efficiency in their respective occupations.

Treas.Reg. § 1.501(c)(5)–1(a). While traditional labor unions clearly fall within this definition, it much less clear which non-union entities constitute labor organizations under this regulation.

In this case, the "inurement" requirement of paragraph (1) is satisfied by the Fund because payments do not discriminate between similarly situated employees.[1] The

---

1. The "inurement" requirement is satisfied by a retirement or other benefit plan as long as pay-   ments do not discriminate between similarly situated employees. Treas.Reg. 1.501(c)(9)–4.

Court concludes, however, that the plaintiff has not shown that it meets the requirements of paragraph (2) of the regulation. The clauses within paragraph (2) are connected by an "and," which instructs that all three characteristics must be true of an organization in order to be found as a labor organization.

While the Fund, in providing retirement benefits, has as its object the betterment of the conditions of the employees, it does not have as its object the improvement of the grade of their products, nor the development of a higher degree of efficiency. In fact, the Fund has no authority to represent employees in the collective bargaining process, but, rather, has the limited authority to invest and manage the available funds to ensure the solvency of the pension fund, and to pay benefits to its members according to the rules governing it. Therefore, the regulation, on its face, excludes the Fund from classification as a tax-exempt labor organization.

### C. The Court Declines to Follow Case Law Supporting the Plaintiff's Claim That It Qualifies as a Tax-exempt Labor Organization.

The plaintiff asserts that the decisions in two analogous cases support its claim that it is a tax-exempt labor organization. The first decision is *Morganbesser v. United States,* 984 F.2d 560 (2d Cir.1993). The second decision is a Report and Recommendation of United States Magistrate Judge Karol in the pending case, *Tupper v. United States,* 1996 WL 741565, 1996 U.S. Dist. LEXIS 15806 (D.Mass.1996). Because the Report and Recommendation in *Tupper* faithfully adopts the analysis in *Morganbesser* and, as a pending Report and Recommendation, is considerably less persuasive authority, the Court will only examine the decision in *Morganbesser* in evaluating the plaintiff's argument.

#### 1. The *Morganbesser* decision.

In *Morganbesser,* the United States Court of Appeals for the Second Circuit held that a local union's pension trust qualified as a tax-exempt labor organization under § 501(c)(5). *Id.* at 561. The pension plan was established in 1958 as a result of a collective bargaining

agreement between the union and a number of construction firms and was funded solely by employers. *Id.* at 561–62. Before ERISA was enacted, the trust was granted an exemption by the IRS as a qualified pension plan. Although it made various amendments between 1976 and 1984, it never requested another determination letter from the IRS until 1984, at which time the IRS determined that the trust did not meet certain ERISA requirements and, therefore, was not qualified for the 1983 tax year. The trust counterargued that, even if the trust was not tax-qualified under the ERISA provisions of the Tax Code, it should be tax-exempt as a "labor organization" under § 501(c)(5).

The IRS argued that a pension plan cannot by definition be a labor organization. *Id.* at 563. The court disagreed. Although there was no case law on point, the court found a number of IRS General Counsel Memoranda ("GCMs") instructive, although not precedential. In GCM 35862 (June 20, 1974) the IRS stated that a pension plan is an integral part of a union's activities and an appropriate labor organization undertaking. Citing to GCM 37942 (April 27, 1979) and 37726 (October 20, 1978), the court further noted that the fact that the trust is employer-funded would not affect its status as a labor organization. *Id.* at 563–64.

The court also rejected the IRS's argument that the trust could not be a labor organization because it was jointly administered by employers and employees. *Id.* The court cited to a number of revenue rulings (Rev.Rul. 59–6, 1959–1 C.B. 121; Rev. Rul. 75–473, 1975–2 C.B. 213) in which the IRS allowed entities which carry out the function of a labor organization and which are jointly administered by employers and employees to qualify as labor organizations.

In a dissenting opinion, Judge Minor raised the concern that if an entity established to pay retirement benefits could obtain an exemption as a labor organization under § 501(c)(5) of the Code rather than under the ERISA provision, § 401(a), there would be little reason for plans to comply with the more stringent requirements of ERISA, and

the congressional scheme for pension benefits might fail. *Id.* at 566 (Minor, J., dissenting). Judge Minor also concluded that the majority had misinterpreted the GCMs and Revenue Rulings.

2. **The Court disagrees with the United States Court of Appeals' decision in *Morganbesser* and, therefore, does not find that decision as persuasive authority supporting the plaintiff's claim that it is a tax-exempt labor organization under § 501(c)(5).**

For the reasons set forth below, this Court finds the majority's analysis in *Morganbesser* unpersuasive and, not being bound by that decision, it will not adopt its ruling. In that case, the court relied on *Portland Co-operative Labor Temple Ass'n v. Commissioner,* 39 B.T.A. 450, 1939 WL 159 (1939), a number of GCMs, which have no precedential value, and certain revenue rulings. This Court agrees with Judge Minor's criticism that the court took that authority out of context, and applied it inconsistently with its ruling.

### a. *Portland Cooperative Labor Temple v. Commissioner*

The court in *Morganbesser* found the language of the Board of Tax Appeals in *Portland Co-operative* that the term "labor organization" "bespeaks a liberal construction" supported a broad definition of that term embracing the trust in *Morganbesser.* The court, however, ignored the language immediately following the quoted words. The Board in *Portland Co-operative* held that a liberal construction is to be given to the term "labor organization" in order *"to embrace the common acceptation of the term."* 39 B.T.A. at 454–55 (emphasis added). Organizations independent from labor unions whose sole purpose is to manage and distribute retirement funds do not fall within the common definition of labor organizations.

When the term was first introduced into federal tax law in the Payne–Aldrich Tariff Act of 1909, ch. 6, 36 Stat. 112, "labor organizations" were defined as "a combination of workmen usually (but not necessarily) of the same trade, or of several allied trades, for the purpose of securing by united action the most favorable conditions as regards wages, hours of labor, etc., for its members." *See*

Oakes, Organized Labor and Industrial Conflicts (1927) at 3; *see also Stone v. Textile Examiners & Shrinkers Employers' Assoc.,* 137 A.D. 655, 122 N.Y.S. 460 (1910); Black's Law Dictionary 874–75 (6th ed. 1990) ("A combination of workers usually, but not necessarily, of the same trade or of several allied trades, for securing by united action, the most favorable conditions as regards wages, hours of labor, etc., for its members.").

A labor organization "must have authority to represent or speak for its members in matters relating to their employment, such as wages, hours of labor, conditions, or economic benefits." *See* Hopkins, The Law of Tax–Exempt Organizations (6th ed. 1992) at 617. Thus, even if the Fund was a tax-exempt labor organization, *Portland Co-operative* is not the authority that supports such a conclusion. The holding there merely was that the term "labor organization" should be construed liberally to embrace its common acceptation of the term. An organization, such as the Fund, that fulfills no representational role on behalf of labor nor is controlled by such an organization does not fall within the common understanding of the term "labor organization." Thus, this Court finds that *Portland Co-operative* does not support the Court of Appeals' conclusions in *Morganbesser* or the plaintiff's argument in this case.

### b. *Revenue Rulings*

Both the court in *Morganbesser* and the plaintiff here rely on Revenue Rulings 75–473 and 59–6, noting that the organizations at issue in those rulings were determined to be labor organizations even though they were jointly administered by employers and employees. The Court concluded from interpreting the revenue rulings that the provision of retirement benefits is a suitable undertaking for a labor organization, and neither employer funding nor joint labor-management control operates to defeat classification as a labor organization.

A more careful analysis of the rulings, however, reaches a different conclusion. The IRS had issued fifteen revenue rulings addressing § 501(c)(5) labor organizations when *Morganbesser* was decided. For the seven rulings in which an organization pro-

vided traditional labor union services such as collective bargaining representation or apprenticeship training, the IRS ruled that the organizations were tax-exempt.[2] When the organization does not provide labor representation, the revenue rulings suggest a twofold inquiry: first, are the organization's activities appropriate undertakings, and second, if so, is the organization controlled and funded by an exempt labor organization?[3] Importantly, among those organizations satisfying the first part of the test, only those that were entirely controlled and funded by an organization that is itself classified as tax-exempt under § 501(c)(5) were ruled tax-exempt. *See* J. Thomas Nolan, *Can a Pension Plan Be a Labor Organization?*, 47 Tax Lawyer at 505–07.

The Fund in this case does not provide labor representation and, thus, falls into the second category of organizations. Although the Fund's activities are appropriate undertakings for a labor organization, it is neither controlled nor funded by an exempt labor organization. Consequently, under a more faithful interpretation of the revenue rulings than that given by the court in *Morganbesser*, the Fund should not be ruled tax-exempt.

### c. General Counsel Memoranda

The court in *Morganbesser* concluded that the nexus between the trust and labor union in that case was "crucial" in showing the trust was a labor organization. 984 F.2d at 563. The Court relied on three GCMs to support the significance it placed on the nexus. The dissent read the same three GCMs as calling for the opposite conclusion.

The majority principally relied upon GCM 37942, quoting the following passage:

[W]e have always considered it significant that the organization was in some way connected with more traditional types of labor organizations.... [W]e think one of the most reliable indicators of a "labor organization" is that it is ... formed as a result of ... representation [of a union], or is connected with or supplements or supports in some way organizations which do perform that role.

*Id.* (quoting GCM 37942 (April 27, 1979) (citations omitted)). Because the trust in *Morganbesser* was formed as a result of a collective bargaining agreement negotiated by the union to supplement the function of the union in providing employees' pension benefits, the court found that it met the test set forth in GCM 37942. *Id.* The *Morganbesser* dissent, however, argued that there could be no such connection with a traditional labor organization where "a pension plan is funded totally by employers, is not controlled by a labor union but by an independent board of trustees composed of an equal number of employer and union representatives and does not support or supplement the union in any way." *Id.* at 566 (Minor, J., dissenting). The dissent further pointed out that in GCM 37942, the General Counsel actually determined that the pension plan, which "provid[ed] only monetary benefits, and perform[ed] no other labor activities, and which lack[ed] the connection" deemed necessary in the GCM did not qualify for tax exemption under § 501(c)(5). *Id.* at 565.

The court also relied on GCM 35862, which concerned a union pension plan trust, funded by mandatory employee contributions and controlled by a bank, but later by a union committee. A supplement to the GCM stated that even when controlled by the bank and not the labor union, the trust was a tax-exempt labor organization. The supplement further stated that it was not necessary for the labor organization's activities to be an integral part of the union activities and that it was sufficient "that the organization be

---

**2.** Rev.Rul. 75–288, 1975–2 C.B. 212; Rev.Rul. 75–473, 1975–2 C.B. 213; Rev.Rul. 76–31, 1976–1 C.B. 157; Rev.Rul. 77–5, 1977–1 C.B. 145; Rev.Rul. 77–154, 1977–1 C.B. 148; Rev.Rul. 59–6, 1959–1 C.B. 121; Rev.Rul. 78–42, 1978–1 C.B. 158.

**3.** Rev.Rul. 74–596, 1974–2 C.B. 167 (providing litigation costs); Rev.Rul. 67–7; 1967–1 C.B. 137 (providing strike benefits); Rev.Rul. 62–17, 1962 C.B. 87 (providing death and accident benefits); Rev.Rul. 68–534, 1968–2 C.B. 217 (operating a newspaper); Rev.Rul. 69–386, 1969–2 C.B. 123 (running a trade or business); Rev.Rul. 72–391, 1972–2 C.B. 249 (operating an employment agency); Rev.Rul. 77–46, 1977–1 C.B. 147 (providing a savings plan); Rev.Rul. 76–420, 1976–2 C.B. 153 (providing strike benefits).

engaged in activities appropriate to an exempt labor union for it to qualify for exemption under Section 501(c)(5)." GCM 35862 (June 20, 1974) at *12. However, a revenue ruling proposed to reflect the views set forth in the supplement never was adopted. *Morganbesser*, 984 F.2d at 565 (Minor, J., dissenting). Rather, the question raised in the GCM 35862 was resolved in the later-issued GCM 37942, which provides:

> Although in the supplement to G.C.M. 35862, we stated that it was not advisable to require that a labor organization's activities be "an integral part of the activities of a labor union," we did not intend to suggest by that statement that no connection of any kind with more traditional labor organizations was required.

GCM 37942 at *22. Thus, GCM 35862 and 37942, at best, beg the question of what kind of connection with more traditional labor organizations is necessary for a pension fund controlled by an independent board of directors to qualify for tax exemption.

The court in *Morganbesser* also relied on GCM 37726, which stated that a labor union's administrative fund, established pursuant to a collective bargaining agreement, funded through employer contributions, whose trustees were all labor union representatives, was not "precluded from [§ 501(c)(5)] exemption solely because they are joint labor-management undertakings or because their revenues in certain circumstances are derived from industry sources." The fund in that case, however, was controlled by a labor union and, ultimately, was granted exemption under the unrelated § 501(c)(9).

Because the authority upon which the court in *Morganbesser* relied is unpersuasive, this Court will not adopt the ruling in that case and finds that the Court of Appeal's decision does not lead this Court to the conclusion that the Fund in this case qualifies as a tax-exempt organization.

**D. The Fund Does Not Have a Sufficient Nexus With a More Traditional Labor Organization to Qualify as a Tax-exempt Labor Organization Itself Under § 501(c)(5).**

Based on its own understanding of the aforementioned revenue rulings and GCMs, which is consonant with Judge Minor's dissent, and upon consideration of the entire record herein, the Court concludes that the Fund does not have a sufficient nexus with a more traditional labor organization to qualify as a tax-exempt labor organization itself. The Fund is controlled by an independent Board of Directors, half of whose members are appointed by labor unions and half by employers, and does not represent the interests of the labor organizations that appointed its directors. In fact, the directors of the Fund, whether appointed by labor or employer interests, owe a fiduciary duty to the Fund beneficiaries and must act in their best interest, even if those interests conflict with the organization that appointed them.[4] *See National Labor Relations Board v. Amax Coal Co.*, 453 U.S. 322, 331–32, 101 S.Ct. 2789, 2795–96, 69 L.Ed.2d 672 (1981) (holding that a management-appointed trustee to a multi-employer pension plan could not be considered a management representative). Thus, in light of the holding in *Amax Coal*, this Court will not assign any significance to the fact that labor unions appointed half of the Fund's directors. *See* Second Circuit Holds Multiemployer Pension Plan Exempt as Labor Organization, 2 No. 1 ERISA Litig.Rep. 15 (1993). Because the Fund is neither controlled by nor represents the interests of traditional labor organizations, the Court holds that there is not an adequate nexus between the Fund and another tax-exempt

---

**4.** The plaintiff points to three specific incidents in which the Fund was engaging in activities involving labor issues, and proffers other evidence that the Fund represents the interests of labor. *See* Plaintiff's Memorandum in Support of Motion for Summary Judgment ("Plaintiff's Memorandum") 32–39. The record shows, however, that in each incident the Fund was acting either in response to judicial mandates or in furtherance of its beneficiaries, and clearly took into account the interests of employers equally with those of employees and labor groups. *See* Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment 10–15. It is apparent from the undisputed facts that any activities engaged in by the Fund involving labor issues arise from its duties to its beneficiaries, not from any loyalty or connection with labor unions.

labor organization for the Fund to qualify as a tax-exempt labor organization under § 501(c)(5).

### E. Allowing Retirement Plans With Few Connections to Traditional Labor Organizations to Qualify for Tax Exemption as Labor Organizations Would Undermine the Legislative Intent of ERISA.

Judge Minor and the IRS have argued that granting exemptions to independent employee-funded retirement funds under § 501(c)(5) undermines the legislative intent of ERISA and opens the floodgates to pension plans wishing to avoid § 401(a) requirements while still retaining tax exemption. The *Morganbesser* majority and the plaintiff here dismiss this argument, asserting that an exemption under § 401(a) is still more favorable than an exemption under § 501(c)(5), and, thus, tax-exemption under § 501(c)(5) will not induce plans to avoid the rigorous requirements under ERISA.

The Court agrees that an exemption under § 401(a) is more favorable than an exemption under § 501(c)(5). Where a plan fails to qualify for an ERISA exemption, an employer may not immediately deduct its contributions and employees must immediately report contributions made on their behalf as income. *See* I.R.C. §§ 402(b), 404(a). The loss of those advantages when a plan does not comply with ERISA, however, is felt by the beneficiaries and the employer. There is no enforcement tool applicable to the plan itself if an exemption under § 501(c)(5) is allowed for such plans. *Morganbesser,* 984 F.2d at 567 (Minor, J., dissenting). The Court agrees with the *Morganbesser* dissent that Congress most likely did not seek to establish the weaker set of inducements for compliance with ERISA. ERISA is a proactive statute designed to encourage plans to adopt its rigorous requirements. If the Tax Code allows the § 501(c)(5) exemption for employer-funded plans, the plans may pur-

posefully discriminate among employees, or fail in other ways to qualify under § 401(a), and still realize tremendous benefits as a tax-exempt organization. In discrimination cases, especially, sheltering retirement plans behind § 501(c)(5) frustrates congressional intent, and should not be permitted.[5]

### III. THE DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT AS TO COUNT II BECAUSE THE PLAINTIFF IS NOT ENTITLED TO RETROACTIVE EXEMPTION PURSUANT TO I.R.C. § 7805(b).

In Count II of its Complaint, the plaintiff alleges that, even if the Court determines it is not a tax exempt "labor organization," it is entitled to retroactive exemption under § 501(c)(5) pursuant to discretion granted the IRS under I.R.C. § 7805(b). Relying on *IBM v. United States,* 343 F.2d 914 (Ct.Cl.1965), the plaintiff argues that since the IRS has granted favorable § 501(c)(5) determinations to other, similarly situated foreign pension funds, it would be an abuse of discretion under § 7805(b) to deny the same treatment to the Fund for the period in question. Plaintiff's Memorandum at 39. The plaintiff alleges that the IRS has issued favorable exemption rulings to two British pension funds to which the Fund claims it is similarly situated. According to the plaintiff's argument, the IRS must accord the Fund identical treatment.

The plaintiff invokes *Automobile Club of Michigan v. Commissioner,* 353 U.S. 180, 184, 77 S.Ct. 707, 709–10, 1 L.Ed.2d 746 (1957), in support of its argument. In that case, the Court determined that "the Commissioner, having dealt with petitioner upon the same basis as other automobile clubs, did not abuse his discretion." The plaintiff argues that the corollary to that rule is that "unequal treatment in applying section 7805(b) would constitute an abuse of discretion." Plaintiff's Memorandum at 40.

---

**5.** The plaintiff argues that the issue of an "end run" on ERISA is simply not present here since the Fund, as a foreign pension fund, is not expected to comply with ERISA, but with Dutch pension laws. However, the fact that ERISA does not apply to the Fund in this case is of no consequence to this discussion. The Court is seeking to discern whether congressional intention was as the IRS asserts, not whether the concerns of the IRS or Judge Minor in *Morganbesser* are compelling under the facts in this case.

This claim fails to withstand scrutiny. First, the court has considerable doubt that the British Navy Funds are similarly situated to the Dutch fund here. Resolution of this issue, however, is not appropriate on summary judgment. Assuming, *arguendo,* that the British Funds are similarly situated, the plaintiff's claim still fails. The defendant has submitted ample authority that the Commissioner's acquiescence in an erroneous decision, published as a ruling, cannot in and of itself bar the United States from collecting a tax otherwise lawfully due. *Dixon v. United States,* 381 U.S. 68, 73, 85 S.Ct. 1301, 1304–05, 14 L.Ed.2d 223 (1965) (decided days after the Court of Claims decision in *IBM v. United States* ). The IRS may change its position retroactively to correct a mistake of law. The Court of Claims has even rejected the *IBM* rule. In two later 1965 decisions, the Claims Court held that a taxpayer who relied upon a private letter ruling issued to another taxpayer was not entitled to relief from the Commissioner's decision to revoke those rulings retroactively. *Bornstein v. United States,* 345 F.2d 558, 563–64 (Ct.Cl.1965); *Knetsch v. United States,* 348 F.2d 932, 940 (Ct.Cl.1965), *cert. denied,* 383 U.S. 957, 86 S.Ct. 1221, 16 L.Ed.2d 300 (1966).[6]

### CONCLUSION

For the foregoing reasons, the Court concludes that based upon the undisputed facts, the plaintiff is not entitled to a refund of taxes paid for 1993 because it does not qualify as a tax exempt "labor organization" under I.R.C. § 501(c)(5). Furthermore, the plaintiff is not entitled to retroactive exemption under that provision pursuant to I.R.C. § 7805(b). Accordingly, the Court shall deny the plaintiff's Motion for Summary Judgment, and shall grant the defendant's Motion for Summary Judgment. The Court shall issue an Order of even date herewith consistent with the foregoing Memorandum Opinion.

### *ORDER*

For the reasons set forth in the Court's Memorandum Opinion of even date herewith,

it is, by the Court, this 9th day of December, 1996,

ORDERED that the Plaintiff's Motion for Summary Judgment shall be, and hereby is, DENIED; and, it is

FURTHER ORDERED that the Defendant's Motion for Summary Judgment shall be, and hereby is, GRANTED; and, it is

FURTHER ORDERED that the above-captioned case shall be, and hereby is, DISMISSED from the dockets of this Court.

---

**6.** These decisions have been codified in I.R.C. § 6110(j), which provides that private rulings

may not be cited or relied upon as precedent.