# UNITED STATES *v.* WELLS FARGO BANK ET AL.

No. 86–1521.   Argued December 8, 1987—Decided March 23, 1988

BRENNAN, J., delivered the opinion of the Court, in which all other Members joined, except KENNEDY, J., who took no part in the consideration or decision of the case.

*Deputy Solicitor General Wallace* argued the cause for the United States. On the briefs were *Solicitor General Fried, Acting Assistant Attorney General Durney, Deputy Solicitor General Lauber, Alan I. Horowitz, Michael L. Paup, Ernest J. Brown,* and *David I. Pincus.*

*Robert H. Rotstein* argued the cause for appellees. With him on the brief for appellees Wells Fargo Bank et al. were *William J. Bird* and *Katherine T. Pratt. Mark G. Ancel* and *Erwin N. Griswold* filed a brief for appellees Rosenberg and Rosen.*

JUSTICE BRENNAN delivered the opinion of the Court.

This case, which consists of two actions consolidated below, *Wells Fargo Bank* v. *United States* and *Rosenberg* v. *United States,* 86–2 USTC ¶ 13,703 (CD Cal. 1986), presents two issues: first, whether certain state and local public housing agency obligations (Project Notes or Notes) were exempt from federal estate taxation prior to June 19, 1984, and second, if so, whether § 641 of the Deficit Reduction Act of 1984 (DEFRA), 98 Stat. 939, which forecloses any refund for estate taxes paid on such Project Notes, is unconstitutional. Relying on *Haffner* v. *United States,* 585 F. Supp. 354 (ND Ill. 1984), aff'd, 757 F. 2d 920 (CA7 1985), the District Court for the Central District of California ruled that Project Notes were exempt. It further held § 641 of the DEFRA unconstitutional. The United States appealed that judgment directly to this Court pursuant to 28 U. S. C. § 1252.

---

*Briefs of *amici curiae* urging affirmance were filed for Herbert K. Cummings et al. by *James J. Carroll, Mortimer M. Caplin,* and *Stuart L. Brown;* for Keith D. Graham by *Daniel Joseph* and *Bob C. Griffo;* for the Estate of Dorothy G. Dillon et al. by *Robert I. White;* and for the Estate of Marion du Pont Scott by *James J. Carroll.*

*John A. Wallace* filed a brief for the American College of Probate Counsel as *amicus curiae.*

We noted probable jurisdiction *sub nom. United States* v. *Crocker National Bank*, 481 U. S. 1047 (1987), and now reverse.

In the late 1930's, the Nation faced a severe housing shortage. To meet that crisis, Congress enacted the Housing Act of 1937, 50 Stat. 888 *et seq.*, which was designed to stimulate local financing of housing projects by empowering state and local housing authorities to issue tax-free obligations, termed "Project Notes." For almost 50 years after the Act's passage, it was generally assumed that this exempted the Notes from federal income tax, but not from federal estate tax. See Committee on Tax Exempt Financing, Section of Taxation, ABA, Report on the Tax Provisions of the United States Housing Act of 1937: Beyond the Looking Glass, 33 Tax Lawyer 71, 105 (1979); Rev. Rul. 81–63, 1981–1 Cum. Bull. 455. However, in 1984, the District Court for the Northern District of Illinois ruled that Project Notes were exempt from estate taxes as well, basing its decision on a variety of statutory construction tools. *Haffner* v. *United States, supra.* The District Court's judgment caused a "rush to market" for Project Notes, and also prompted those who had already paid estate taxes on the Notes to seek refunds. Within months of the District Court's ruling, Congress enacted the DEFRA, § 641 of which, effective June 19, 1984, eliminated the purported estate tax exemption for Project Notes, and also foreclosed those who had already paid estate taxes on Project Notes from obtaining a refund thereon. Against this backdrop, we turn to the facts of the instant appeal.

The *Wells Fargo* appellees are the executors of the estate of Jules C. Stein, who died in April 1981. Included in the estate are Project Notes with an aggregate face value of $9,550,000. They filed an estate tax return listing these notes as taxable, and paid the tax. In June 1984, following the *Haffner* decision, appellees timely filed an amended estate tax return declaring that the Project Notes were exempt

from taxation and claiming a refund. After the Commissioner of Internal Revenue rejected their claim, they brought suit in the District Court for the Central District of California.

The *Rosenberg* appellees are the coexecutors of the estate of Morris Folb, who died in July 1982. Project Notes with face values totaling $250,000 are part of the estate. Appellees filed an estate tax return, and, like the *Wells Fargo* appellees, included the Project Notes as taxable assets and paid tax on them. In August 1984, also like the *Wells Fargo* appellees, they filed their amended tax return claiming that the Project Notes were exempt from estate taxation. The Commissioner denied their claim and they too filed suit in the Central District of California, where their case was consolidated with *Wells Fargo*.

On cross-motions for summary judgment the District Court concluded, as mentioned above, that the Project Notes were tax exempt when the returns were filed, relying on the reasoning in *Haffner*. The court also held that § 641 of the DEFRA unconstitutionally denied appellees due process and equal protection of the laws as guaranteed by the Fifth Amendment. Although it is the portion of the judgment declaring an Act of Congress unconstitutional that provides us with appellate jurisdiction, such an appeal brings the entire case before us. *United States* v. *Locke*, 471 U. S. 84, 92 (1985). Moreover, our established practice is to resolve statutory questions at the outset where to do so might obviate the need to consider a constitutional issue. *Ibid.; Ashwander* v. *TVA*, 297 U. S. 288, 347 (1936) (Brandeis, J., concurring). Therefore, we consider first the question whether the statute exempts Project Notes from estate taxation.

Informing our examination of this issue is the settled principle that exemptions from taxation are not to be implied; they must be unambiguously proved. *E. g., Oklahoma Tax Comm'n* v. *United States*, 319 U. S. 598, 606 (1943); *United States Trust Co.* v. *Helvering*, 307 U. S. 57, 60 (1939); *Rapid*

*Transit Corp.* v. *New York*, 303 U. S. 573, 592–593 (1938). Appellees do not dispute, however, that 26 U. S. C. §§ 2001 and 2002 (1982 ed. and Supp. III), which define the taxable estate for estate tax calculation, by their terms include the Project Notes. Only by referring outside the Internal Revenue Code, specifically to § 5(e) of the Housing Act of 1937, 50 Stat. 890, as amended, 42 U. S. C. § 1437i(b), do appellees endeavor to establish their exemption.

Of course, we begin our analysis of § 5(e) with the statutory language itself. This section states that "[Project Notes], including interest thereon, . . . shall be exempt from all taxation now or hereafter imposed by the United States." Well before the Housing Act was passed, an exemption of property from all taxation had an understood meaning: the property was exempt from *direct* taxation, but certain privileges of ownership, such as the right to transfer the property, could be taxed. Underlying this doctrine is the distinction between an excise tax, which is levied upon the use or transfer of property even though it might be measured by the property's value, and a tax levied upon the property itself. The former has historically been permitted even where the latter has been constitutionally or statutorily forbidden. The estate tax is a form of excise tax. *Greiner* v. *Lewellyn*, 258 U. S. 384 (1922) (municipal bonds subject to federal estate taxation notwithstanding an intergovernmental tax immunity barring a direct tax on the bond); *Murdock* v. *Ward*, 178 U. S. 139, 148 (1900) (federal tax exemption on federal bonds did not extend to taxation on the right to transfer the bonds at death); *Plummer* v. *Coler*, 178 U. S. 115 (1900) (State may calculate estate tax based on total value of property passing through the estate, including federal obligations exempt from direct taxation by the State). See also *United States Trust Co.* v. *Helvering, supra,* at 60 (applying the rule of *Greiner, Murdock,* and *Plummer* to hold that property subject to a general exemption from "all taxation" would not exempt it from excise taxes such as the estate tax);

Treas. Reg. § 20.2033–1, 26 CFR § 20.2033–1 (Supp. 1964) (statutes exempting federal obligations from "all taxation" refer only to direct taxation). Cf. *West* v. *Oklahoma Tax Comm'n*, 334 U. S. 717, 727 (1948) (recognizing the distinction between direct taxes and excise taxes); *Reinecke* v. *Northern Trust Co.*, 278 U. S. 339, 347 (1929) (same). Consistent with this understanding, on the rare occasions when Congress has exempted property from estate taxation it has generally adverted explicitly to that tax, rather than generically to "all taxation." *E. g.*, Revenue Act of 1934, § 404, 48 Stat. 754, repealed by the Revenue Act of 1962, § 18, 76 Stat. 1052. Placed in context, then, § 5(e) does not stand for appellees' proposition that Project Notes were intended to be exempt from estate taxes; it stands for exactly the opposite.

Appellees attempt to bolster their contrary view with various indicia of an alleged congressional intent. Although these considerations were found compelling in *Haffner*, we conclude, as did the Tax Court in *Estate of Egger* v. *Commissioner*, 89 T. C. 726 (1987), that the factors appellees rely upon, whether considered alone or in combination, are insufficient to demonstrate that Congress intended to exempt Project Notes from estate taxation in contravention of the understood meaning of § 5(e), a demonstration which must be unambiguous under the principle disfavoring implied tax exemptions.

Appellees' first argument centers on § 20 of the Housing Act of 1937, 50 Stat. 898, later repealed, which gave the newly created United States Housing Authority the power to issue bonds and other obligations. Section 20(b) provided that "[s]uch obligations shall be exempt, both as to principal and interest, from all taxation (except surtaxes, estate, inheritance, and gift taxes) now or hereafter imposed . . . ." The familiar argument goes that Congress knew how to limit the scope of the exemption when it wanted to do so; its decision not to include limiting language in § 5(e), in light of an

express limitation in § 20(b), demonstrates an intent to exempt Project Notes from estate tax.

This argument does not withstand careful scrutiny. In 1937, when the Housing Act was passed, what is now the income tax comprised two parts: a "normal" tax set at a flat 4 percent, and a graduated "surtax" with rates reaching up to 75 percent. As is plain from the face of § 20(b), Congress intended federal housing obligations to be exempt only from the normal tax. Yet as the normal tax and the surtax were both direct, simply making the federal obligations "exempt from all taxation" would exempt too much. Thus, Congress "excepted" surtaxes from the exemption. But that exception, if left by itself, would have created its own anomaly: the strict application of the rule *"expressio unius est exclusio alterius"*—*i. e.*, the expression of one is the exclusion of others—would have resulted in exempting these obligations from all taxes, direct or indirect, except the surtax. To avoid that particular pitfall, Congress also excepted estate, inheritance, and gift taxes from § 20(b). Such language was commonplace when Congress sought to exempt items from the normal tax, but not the surtax. *E. g.*, Home Owners' Loan Act of 1933, § 4(c), 48 Stat. 130; Farm Credit Act of 1933, § 63, 48 Stat. 267.

In contrast, § 5(e) needed no parenthetical exception. Congress fully intended Project Notes to be exempt from surtaxes as well as normal taxes, and thus exempting them "from all taxation" stated with precision the congressional will. We cannot attribute to Congress an intent to break new ground in tax law by cleverly hiding an estate tax exemption, discernable only by comparing two unrelated provisions of the Housing Act. Nor would it make sense for Congress to legislate in such a bizarre fashion. If Congress really wanted to create an especially broad tax exemption for Project Notes, as appellees assert, one would expect it to do so notoriously enough to attract investors, not surreptitiously enough to evade detection for half a century.

Appellees' second indicator of congressional intent is a statement made by Senator Walsh during the floor debate. In the midst of a lengthy speech, he stated: "Obligations, including interest thereon, issued by public housing agencies, . . . are to be exempt from all taxation now or hereafter imposed by the United States. In other words, the bill gives the public housing agencies the right to issue tax-exempt bonds, which means they are free from income tax, surtax, estate, gift, and inheritance taxes." 81 Cong. Rec. 8085 (1937). If, as appears from the statement's structure, the Senator intended to offer a definition of "tax-exempt bonds," then we must conclude that he misspoke, for as we have already demonstrated, tax-exempt bonds were presumed to be exempt only from direct taxes. Even if, as appellees assert, the Senator intended to refer solely to Project Notes, we do not deem his statement compelling in this case. The relevant passage comes in the middle of a long speech, and no similar expression is to be found in any other legislative debate or document. This short, isolated comment simply cannot overcome the understood meaning of § 5(e) and the presumption against implied tax exemptions.

Appellees also assert that Congress' intent can be discerned by reference to a rejected administration housing proposal, which contained in its analogue to § 5(e) an express statement that Project Notes would be subject to estate taxes. We are unpersuaded by appellees' contention that the Finance Committee's decision not to include a similar express reference to the estate tax indicates a desire to exempt Project Notes from that tax. Equally plausible is that the Committee omitted the express exception as unnecessary. Further, neither the administration, the Finance Committee, nor even a single Senator considered this difference worthy of comment, although numerous other variations between the two proposals received attention.

Finally, appellees point to a statement Warren J. Vinton, who later became the first Chief Economist of the United

States Housing Authority, made to the American Federation of Housing Authorities shortly after the Housing Act was passed. He stated that Project Notes were "exempt from all Federal taxes, not only normal income taxes but surtax, inheritance tax, and gift tax. Investments of that nature are getting rare in the country." Brief for Appellees Wells Fargo Bank et al. 15 (emphasis added in brief omitted). However, at the time he uttered these words, Vinton was not yet employed·by the Housing Authority. We cannot attribute to this isolated comment the aura of a contemporaneous agency interpretation.

The understood meaning of §5(e) and the presumption against implied tax exemptions are too powerful to be overcome by the indicia of congressional intent put forward by appellees. Accordingly, we conclude that the Housing Act of 1937 does not exempt Project Notes from estate taxation. We therefore need not consider the constitutionality of §641 of the DEFRA. The judgment of the District Court is

*Reversed.*

JUSTICE KENNEDY took no part in the consideration or decision of this case.