T.C. Memo. 1996-365

UNITED STATES TAX COURT

TIMOTHY W. AND SUZANNE M. COFFIELD, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1205-95.                    Filed August 8, 1996.

Timothy W. and Suzanne M Coffield, pro se.

<u>Mark S. Mesler</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

DAWSON, <u>Judge</u>:  This case was assigned to Special Trial
Judge Carleton D. Powell pursuant to the provisions of section
7443A(b)(4) and Rules 180, 181, and 183.[1]  The Court agrees with

---

[1]   Section references are to the Internal Revenue Code in
effect for the year in issue, and all Rule references are to the
Tax Court Rules of Practice and Procedure.

and adopts the opinion of the Special Trial Judge that is set forth below.

OPINION OF THE SPECIAL TRIAL JUDGE

POWELL, Special Trial Judge:  Respondent determined a deficiency in petitioners' Federal income tax and an accuracy-related penalty pursuant to section 6662(a) for the taxable year 1991 in the respective amounts of $9,772 and $1,954.

The issues are:  (1) Whether a distribution from a qualified retirement plan is includable in petitioners' gross income; (2) whether petitioners are liable for an additional tax on the distribution pursuant to section 72(t); (3) whether petitioners are liable for an accuracy-related penalty pursuant to section 6662(a) for negligence; and (4) whether this Court has the jurisdiction to redetermine respondent's interest computation in this case.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference.

Petitioners resided in Evans, Georgia, at the time they filed their petition in this case.  The term "petitioner" refers to Timothy W. Coffield.

Petitioner was born in Pittsburgh, Pennsylvania, in 1955. He lived in Pittsburgh and worked for Westinghouse Electric Co.

(WEC) until 1991.  In July 1991, petitioner ceased employment at WEC, moved to Georgia, and began working for Westinghouse Savannah River Co. (WSR).

Petitioners purchased a home in Evans, Georgia, on September 30, 1991, for $219,900.  They sold their home in Pittsburgh on October 15, 1991, for $112,000.  To finance a portion of the purchase price of the new home, petitioner withdrew a total of $51,002 from his WEC savings program, a qualified retirement plan, by two requests dated July 12, 1991.  The withdrawals constituted only a portion of the savings plan.  As of June 30, 1991, petitioner's Statement of Accounts from the savings plan shows that he had a total of $24,153.63 in "after-tax contributions".  We assume that between June 30th and the date of distribution, petitioner made some additional after-tax contributions.  At the time of the withdrawal petitioner had contributed approximately $25,000 to the savings plan all of which was withdrawn.  A statement for December 31, 1991, shows no after-tax contributions remaining in petitioner's account.  WEC issued a Form 1099-R for 1991 reporting $25,709 of the gross distribution as taxable income to petitioner.  Petitioners apparently did not receive the Form 1099-R until after they filed their Federal income tax return for 1991.

Petitioners did not report any income as a result of the distribution on their 1991 joint Federal income tax return.  In

the notice of deficiency respondent determined that petitioners were liable for income tax on the portion of the distribution reported as taxable income on the Form 1099-R ($25,709). Respondent further determined that the 10-percent additional tax imposed by section 72(t) applied to this amount, and that petitioners were liable for a negligence penalty pursuant to section 6662(a).

OPINION

## Savings Plan Distribution

Under section 402(a) any distribution from any employees' trust described in section 401(a) that is exempt from tax under section 501(a) shall be taxable to the distributee in the year of distribution under section 72.[2]  Section 72(e) provides that the amount received is includable in gross income, except to the extent attributable to an individual's investment in the contract.  For our purposes here, petitioner's investment in the contract is the amount of his "after-tax contributions".

Section 402(a)(5) excludes from gross income any portion of a distribution from a qualified trust that is transferred to an eligible retirement plan.  The term "eligible retirement plan" is defined as (1) an individual retirement account described in

---

[2]   The parties agree that the savings plan constitutes a "qualified plan".  We presume this means a "qualified trust" within the meaning of sec. 401(a), which is exempt from tax under sec. 501(a), because neither party has argued to the contrary.

section 408(a); (2) an individual retirement annuity described in section 408(b) (other than an endowment contract); (3) a qualified trust; and (4) an annuity plan described in section 403(a). Sec. 402(a)(5)(E)(iv).

Petitioner's investment of the distribution into a personal residence does not constitute a transfer to an "eligible retirement plan" within the meaning of section 402(a)(5)(A)(ii). See Harris V. Commissioner, T.C. Memo. 1994-22; Luke v. Commissioner, T.C. Memo. 1993-409. It is a well-established principle that "exemptions from taxation are not to be implied; they must be unambiguously proved." United States v. Wells Fargo Bank, 485 U.S. 351, 354 (1988). Section 402(a)(5) does not apply to exclude the distribution from gross income, and we must apply the general rule of section 402(a).

As discussed infra, it appears from petitioner's statements from the savings plan that the Form 1099-R excluded the proportionate share of petitioner's investment in the contract. Accordingly, we hold that the taxable portion of the distribution was $25,709, and that amount was taxable to petitioners during 1991. We, therefore, sustain respondent's determination on this issue.

## Section 72(t) Additional Tax

Section 72(t)(1) imposes an additional tax on an amount received from a qualified retirement plan equal to 10 percent of

the portion of such amount that is includable in gross income. Section 72(t)(2) exempts distributions from the additional tax if the distributions are made, inter alia, (1) to an employee age 59-1/2 or older; (2) to a beneficiary (or to the estate of the employee) on or after the death of the employee; (3) on account of disability; (4) as part of a series of substantially equal periodic payments made for life; (5) to an employee after separation from service after attainment of age 55; or (6) as dividends paid with respect to corporate stock described in section 404(k).

None of the specifically enumerated exceptions in section 72(t)(2) applies to the distribution, and we have held that a portion of the distribution must be included in petitioner's gross income. Accordingly, petitioners are liable for the additional tax imposed by section 72(t)(1) on the portion of the distribution includable in gross income as determined by respondent.

Accuracy-related Negligence Penalty

In the notice of deficiency respondent determined that petitioners are liable for an accuracy-related penalty for negligence or disregard of the rules or regulations. Section 6662(a) and (b)(1) impose an accuracy-related penalty equal to 20 percent of the portion of the underpayment of income tax that is attributable to negligence. Negligence includes the failure to

make a reasonable attempt to comply with the law and disregard of the rules and regulations includes any "careless, reckless, or intentional disregard."  Sec. 6662(c).  While we have sustained respondent's determinations with respect to the savings plan distribution includable in gross income and the additional tax under section 72(t), we do not believe that the understatement of tax was due to negligence.  It appears that petitioner was not given a Form 1099R or any other notice that the withdrawal was taxable prior to filing his return.  As we understand, petitioner thought that the withdrawal of his contribution and the earnings thereon were exempt.  While he was incorrect, we recognize that there may be room for confusion.

<u>Interest</u>

Petitioner argues that we should abate the interest determination made by respondent pursuant to section 6404(e) because of respondent's delay in issuing the notice of deficiency.  The United States Tax Court is a court of limited jurisdiction.  See sec. 7442; <u>Wilt v. Commissioner</u>, 60 T.C. 977, 978 (1973).  New section 6404(g), added to the Internal Revenue Code by section 302 of the Taxpayer Bill of Rights 2, Pub. L. 104-168, authorizes this Court to review the Secretary's failure to abate interest with respect to requests for abatement after July 30, 1996.  Because this case does not involve a request for abatement after July 30, 1996, we lack jurisdiction to abate

interest herein.  See Commissioner v. McCoy, 484 U.S. 3, 7 (1987); 508 Clinton Street Corp. v. Commissioner, 89 T.C. 352, 354 (1987).

Decision will be entered for respondent with respect to the deficiency, including the additional tax under sec. 72(t), and decision will be entered for petitioners with respect to the penalty under sec. 6662(a).