**MURPHY OIL USA, INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. CIV. 97–1124.**

United States District Court,
W.D. Arkansas,
El Dorado Division.

Nov. 19, 1999.

Robin L. Greenhouse, McDermott, Will & Emery, Washington, DC, for Plaintiff.

Andrew T. Pribe, U.S. Department of Justice, Washington, DC, for Defendant.

## MEMORANDUM OPINION

DAWSON, District Judge.

This case of first impression is before the Court on the cross motions for summary judgment filed by plaintiff Murphy Oil USA, Inc. (Murphy)(doc. # 24) and defendant United States of America (the government)(doc. # 21). The case arises out of Murphy's claim for a refund of all or

some of the federal chemical excise taxes paid on its sales of refinery grade propylene during the 1992 through and including 1995 tax years. Unfortunately, there is no case law to guide the Court in its decision on the excise tax issue, but the parties have submitted four volumes of documents in support of their respective positions. Plaintiff alleges that all, or in the alternative some, of its sales of refinery grade propylene are exempt from the chemical excise tax under Internal Revenue Code section 4662(b)(10). The motions have been fully briefed, and oral arguments were heard by the Court on October 5, 1999.[1] For the reasons set forth in this memorandum and order, the government's motion will be GRANTED in part and DENIED in part and Murphy's motion will also be GRANTED in part and DENIED in part.

Jurisdiction is proper pursuant to 28 U.S.C. § 1346(a)(1) and 26 U.S.C. § 7422.

## I. Factual Background

The material facts are not in dispute. Murphy Oil is a Delaware corporation engaged in the refining, marketing, and transporting of petroleum products with its principal place of business in El Dorado, Arkansas. As part of its operations, Murphy owns two refineries, one in Meraux, Louisiana and the other in Superior, Wisconsin. Both refineries are operated with the primary objective of producing gasoline from heavy gas oil, which is a naturally occurring substance composed of different chemical compounds. In general, Murphy's refineries use several different technical processes designed to manufacture gasoline and/or to isolate from each other the various chemical components, including propylene, that make up heavy gas oil.

The gas oil is first subjected to a process called "fluid catalytic cracking" (FCC). In this process, the gas oil is combined with another substance called a fluid catalyst, and this mixture is subjected to intense heat within the FCC unit. The mixture of the gas oil and the fluid catalyst is "cracked" into new, lighter chemicals including gasoline, liquefied petroleum gas (LPG), light cycle oil and a waste product (slurry).

The LPG that is created as a result of the cracking is itself a mixture comprised of several different compounds. Murphy's refineries subject the LPG to a second process called "fractioning." During fractioning, nothing is mixed with the LPG, and no new chemicals are created. Fractioning is a means of separating from each other the various chemicals that make up the LPG stream, and one of the compounds isolated by fractioning is called "C3/C4" which contains propane, propylene, butanes and other chemicals.

A third process called "splitting" is next applied to the C3/C4 stream. As with fractioning, no new chemicals are added or created. During splitting, a mixture containing mostly propane and propylene is separated from the other chemicals contained within the C3/C4 stream.[2] The principal objective of the splitting process is to isolate and separate the propylene content from the other chemicals within the C3/C4 stream. However, it is not easy to separate the propane from the propylene because of their similar molecular composition and boiling ranges. The propane/propylene mixture that results from splitting is what the oil and gas industry commonly refers to as refinery grade propylene or P/P mix.

1. Robin L. Greenhouse of McDermott, Will & Emery appeared on behalf of the plaintiff, Murphy Oil. The defendant was represented by Andrew Pribe, United States Department of Justice. The attorneys for both parties are to be commended for their excellent briefs and oral arguments.

2. Propylene is a substance that can exist by itself without propane. There is a process for creating propylene called "metathesis" that does not co-produce propane, however, Murphy's refineries do not employ the metathesis process.

It is possible and sometimes desirable to further refine or distill the refinery grade propylene to remove the propane and other contaminants contained in the mix with the objective of obtaining a purer grade of propylene. According to industry standards, chemical-grade propylene must contain 90–94% propylene, while polymer-grade propylene must contain 99.5% propylene (with the balance being non-propane contaminants). (Pl.'s Stat. Uncontr. Facts at 13.) However, Murphy does not perform this additional process, and apparently has no plans to invest in the capital improvements that would be required to do so.

During the applicable tax years, the Meraux refinery produced some 2,168,532 barrels of refinery grade propylene consistently composed of approximately 75 percent propylene and 25 percent propane. At times, the mix contained as much as 80 percent propylene. The 1,009,419 barrels of refinery grade propylene produced at the Superior refinery were usually composed of approximately 60 percent propylene and 40 percent propane, but at times the propylene content was as high as 73 percent.

Because each barrel of the refinery grade propylene produced by Murphy is actually a mix of propylene, propane and trace amounts of other chemicals, the price per barrel is computed as the sum of the price of the contained weight of the propylene plus the price of the contained volume of the propane.[3] Therefore, the documentation for all sales of Murphy's refinery grade propylene indicates a price based upon the separate values of the propylene and propane contained within the substance.

Prior to 1992, Murphy made a self-determination that refinery grade propylene is exempt from the chemical excise tax imposed by the federal tax code. In April 1991, Murphy applied for and received from the Internal Revenue Service a "G" suffix registration number which permitted Murphy to enter into tax-free sales of exempt chemicals with other "G" suffix registrants.[4] In its application, Murphy stated that the "G" suffix registration was appropriate because it "produce[s] a propylene mix, part propylene and part propane, which can be classified as a 'mixed hydrocarbon stream' per Section 4662(1986 code)(b)(10)." (Pl.'s Stat. Uncontr. Facts Ex. 12 at 50–51.)

Based upon its self-designation during the applicable time period, Murphy alleges that it treated all sales of its refinery grade propylene as nontaxable provided that each buyer could meet two conditions: (1) the buyer had to provide evidence of its own "G" suffix registration; and (2) the buyer had to certify that the substance was being purchased for a tax-exempt purpose. If the buyer did not present evidence of the "G" suffix registration, Murphy collected the applicable excise tax and paid the tax to the government.[5] As long as the buyer had a "G" suffix registration, Murphy sold the substance on a tax-free basis.[6] If the refinery grade propylene was later put to a use that was not tax-exempt, Murphy assumed that the buyer

3. There is no correlation between the price of propylene and propane.

4. Following a corporate reorganization in January 1993, Murphy applied for and received a new "G" suffix registration number.

5. One such purchaser was American Cyanimid, who purchased approximately 1.17% of the refinery grade propylene made by Murphy. As American Cyanimid did not have a "G" suffix registration number, Murphy paid the chemical excise tax on the contained

weight of the propylene within the refinery grade propylene.

6. If the refinery grade propylene may properly be characterized as an intermediate hydrocarbon stream, the buyer of the substance may purchase it on a tax-free basis provided that the purchaser is not going to extract, isolate, or otherwise cause the cessation of the contained propylene. If the purchaser is going to put the refinery grade propylene to one of these uses, then the purchaser becomes liable for the tax. 26 U.S.C. § 4662(b)(10)(B).

or end user would collect and/or pay the applicable chemical excise tax. During 1992 through and including 1995, the roughly 3,177,941 barrels (133,455,842 gallons) of refinery grade propylene sold by Murphy on a tax-exempt basis actually contained 222,816.23 tons (102,609,362 gallons) of propylene. (Pl.'s Stat. Uncontr. Facts at 24–25.)

Almost all of the refinery grade propylene manufactured by Murphy was sold to Ferrell Gas, who purchased about 96.83% of the substance produced by Murphy during the applicable years. Ferrell Gas was not really a consumer of refinery grade propylene, for it merely acted as a reseller who transported the substance from Murphy's refineries to the end users. Ferrell Gas did not pay or collect chemical excise taxes on its purchases and sales of refinery grade propylene, because it possessed a "G" suffix registration number and did not extract, isolate or otherwise cause the cessation of the contained propylene. For these same reasons, Murphy did not pay or collect the excise tax on its sales of refinery grade propylene to Ferrell Gas.

More than half, about 72,445,745 gallons, of the refinery grade propylene manufactured and sold by Murphy was purchased, either directly from Murphy or indirectly through Ferrell Gas, by companies who then further distilled or processed the product to manufacture a purer grade of propylene.[7] The companies that bought the refinery grade propylene for the purpose of upgrading the propylene content paid or collected the federal chemical excise tax applicable to the manufacture, sale or use of the resulting chemical- or polymer-grade propylene. The excise tax was paid only on the contained weight of the

propylene in the chemical- or polymer-grade propylene.

About 57,119,799 gallons (around 44%) of Murphy's refinery grade propylene was sold, either directly or indirectly, to companies who did not further distill or process the substance, but used the contained propylene to manufacture cumene, a non-taxable chemical if it is manufactured within the United States.[8] The propylene used in the manufacture of cumene expires or ceases to exist during the manufacturing process. Therefore, if refinery grade propylene is an intermediate hydrocarbon stream, the companies who use propylene to manufacture cumene could be liable for payment of the chemical excise tax as a user or manufacturer under section 4662(b)(10). Companies purchasing the refinery grade propylene in order to manufacture cumene included Georgia Gulf (52,420,679 gallons); Koch Chemicals (1,278,212 gallons); and Chevron Chemical (who used between 6,157,634 and 2,736,726 gallons of P/P mix to make cumene). Georgia Gulf did not pay or collect any excise taxes, believing that the seller/manufacturer of the substance had already paid the tax and that the price it paid for the substance included the excise taxes. For its part, Chevron Chemical paid the chemical excise tax on the amount of the contained propylene used in the manufacture of the cumene.

A very small percentage of the refinery grade propylene was ultimately purchased by Coastal Refining & Marketing (14,292 gallons) and Mark West Hydrocarbon, Inc. (31,604) who used or resold the refinery grade propylene for a tax-exempt "qualified fuel use," such as the manufacture of

---

**7.** These companies were B.P. Chemicals, Inc. (852,934 gallons); J.T.S. Enterprises (1,378,-863 gallons); Enterprise Products Company (1,095,561 gallons)(Enterprise resold about 4% of the P/P mix without collecting the tax); Chevron Chemical Company (34,209,075 gallons from Ferrell and Citgo)(Chevron used between 8% and 18% of the P/P mix to manufacture cumene); Citgo Refining and Chemicals, Inc. (7,840,712 gallons)(Citgo resold

about 63% of the P/P mix to Chevron without collecting the tax); Huntsman Petrochemical Corporation/Texaco Chemical (31,971,603 gallons); Fina Oil & Chemical (987,312 gallons).

**8.** Cumene is a taxable substance if it is imported into the United States. 26 U.S.C. §§ 4671, 4672.

motor fuel. Coastal held a "G" suffix registration and certified their use was tax-exempt, therefore no excise tax was paid by Coastal or Murphy. (Pl.'s Stat. Uncontr. Facts, ¶ 80). Mark West merely acted as another reseller of the refinery grade propylene, but sold the substance to customers who used it for a tax-exempt "qualified fuel use." (Pl.'s Stat. Uncontr. Facts, ¶ 83.)

Finally, some 7,112,912 gallons of the refinery grade propylene was resold by Ferrell on a tax-free basis to companies whose ultimate use of the substance is unknown.

During the tax years 1992 through and including 1995, Murphy timely filed quarterly Form 720 federal excise tax returns reporting and paying the excise taxes for sales of the refinery grade propylene to buyers who did not hold the "G" suffix registration number. Murphy did not report or pay excise taxes on sales to purchasers who did possess the "G" suffix registration and who certified that the refinery grade propylene would be used for a tax-exempt purpose.

During an audit of Murphy's federal excise tax returns in the fall of 1995, the revenue agent requested technical advice from the IRS National Office regarding the applicability of the exemption claimed by Murphy with regard to sales of refinery grade propylene. Murphy's position was (and still is) that sales of the refinery grade propylene are exempt from excise taxes under the intermediate hydrocarbon stream exemption found at section 4662(b)(10) of the Internal Revenue Code. Furthermore, Murphy contended that even if the refinery grade propylene is not exempt, then only the weight of the contained propylene should be used to compute the amount of the excise tax to be imposed, because propane is not a taxable chemical. Finally, pursuant to section 7805(b), Murphy requested relief from the retroactive application of any adverse decision with regard to the applicability of the tax to the sales of the refinery grade propylene.

On May 13, 1996 the IRS issued a technical advice memorandum (TAM 9636002) finding that, not only were none of Murphy's sales of refinery grade propylene excepted from the environmental chemical excise tax by the intermediate hydrocarbon stream exception found in section 4662(b)(10), but also that Murphy was liable for the tax on the total weight of the refinery grade propylene, *including the contained propane* (emphasis added). The IRS also concluded that Murphy's request for relief from retroactive application of the ruling should be denied.

On or about March 10, 1997, the government assessed environmental chemical excise taxes, interest and penalties with regard to Murphy's sales of refinery grade propylene during the tax years 1992 through and including 1995. Murphy paid all of the assessments, some $1,762,769.80, on April 25, 1997. Thereafter, on August 14, 1997, Murphy filed its complaint in the above-captioned case seeking a refund.

## II. Discussion.

### A. Summary Judgment Standard.

The court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). A fact is material only when its resolution affects the outcome of the case. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). If reasonable minds could differ as to the import of the evidence, judgment should not be granted. *Id.* at 250–51, 106 S.Ct. at 2511–12. However, the nonmoving party must set forth specific facts, by affidavit or otherwise, sufficient to raise a genuine issue of material fact for trial. *Celotex*

*Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

### B. Excise Taxes on Certain Chemicals.

The issues presented by this case require the Court to interpret and apply two provisions of the Internal Revenue Code promulgated by the Hazardous Substance Response Revenue Act of 1980.[9] The first statute imposes a tax "on any taxable chemical sold by the manufacturer, producer, or importer thereof." 26 U.S.C. § 4661(a).[10] The chemical propylene is included on the table of taxable chemicals, but propane is not. *See* section 4661(b). There is no question that Murphy manufactures or produces propylene within the United States and that the propylene is therefore a "taxable chemical" under section 4662(a)(1). The question is whether Murphy's sales of refinery grade propylene are properly excluded from the chemical excise tax by section 4662(b) which provides in pertinent part:

(10) **Hydrocarbon streams containing mixtures of organic taxable chemicals.—**

(A) **In general.**—No tax shall be imposed under section 4661(a) on any organic taxable chemical while such chemical is part of an intermediate hydrocarbon stream containing one or more organic taxable chemicals.

(B) **Removal, etc., treated as use.**—For purposes of this part, if any organic taxable chemical on which no tax was imposed by reason of subparagraph (A) is isolated, extracted, or otherwise removed from, or ceases to be part of, an intermediate hydrocarbon stream-

(i) such isolation, extraction, removal, or cessation shall be treated as use by the person causing such event, and

(ii) such person shall be treated as the manufacturer of such chemical.

26 U.S.C. § 4662(b)(10).

■■■ It is appropriate at this point to note that in an action for a tax refund, the government's determination of a tax deficiency is presumed to be correct. *Banks v. Commissioner of Internal Revenue,* 322 F.2d 530 (8th Cir.1963). The taxpayer bears the burden of proving the amount of the tax refund to which it is entitled. *United States v. Janis,* 428 U.S. 433, 440, 96 S.Ct. 3021, 3025, 49 L.Ed.2d 1046 (1976).

The parties do not agree on the appropriate rule of statutory construction governing this case. Murphy contends that section 4662(b)(10) does not really provide an exemption to the chemical excise tax: it simply defers the application of the tax to the person who isolates, extracts or otherwise removes the taxable chemical from the intermediate hydrocarbon stream. Murphy reasons that, because the applicable statute does not create an exemption, the Court should construe the revenue statute against the government, resolving doubt in favor of the taxpayer. *See Security Bank Minnesota v. C.I.R.,* 994 F.2d 432, 436 (8th Cir.1993). The government takes the opposite view and argues that the Court must observe the well "settled principle that exemptions from taxation are not to be implied; they must be unambiguously proved." *U.S. v. Wells Fargo Bank,* 485 U.S. 351, 354, 108 S.Ct. 1179, 1182, 99 L.Ed.2d 368 (1988) (citations omitted).[11]

9. The chemical excise tax was enacted in order to provide financing for the Hazardous Substance Superfund. On December 31, 1995, when the Superfund met or exceeded the statutory balance, the chemical excise tax was terminated. *See* 26 U.S.C. § 4661(c).

10. Unless otherwise noted, all further statutory references shall be to Title 26 of the United States Code (the Internal Revenue Code of 1986).

11. In the *Wells Fargo Bank* case, the Supreme Court explained that an excise tax is "levied upon the use or transfer of property..." as distinguished from a direct tax upon the property itself. *Id.* at 355.

The Court finds that the chemical excise tax scheme supplies a general rule imposing the tax on all sales of the taxable chemical propylene, and that the general rule is to be followed unless one of the exceptions or other special rules contained within section 4662(b) acts to relieve the seller of liability for the tax.[12] This is similar to the income tax scheme under which all income is presumed taxable unless a statutory exemption is applicable. Therefore, the Court must presume, in accordance with the general rule, that the refinery grade propylene sold by Murphy is subject to the excise tax, and it will be incumbent upon Murphy to establish that its sales of the substance fall within one of the exceptions or exemptions to the general rule. In order to prevail, Murphy must prove by a preponderance of the evidence that the "intermediate hydrocarbon exception" to the chemical excise tax applies to sales of its refinery grade propylene, and that the government's refusal to allow the exception was plainly erroneous.

With regard to whether the intermediate hydrocarbon exception applies, the Court begins its analysis by referring to the language of the statute. "And, when the language of the statute is clear and unambiguous, our analysis should also end here." *Chernin v. U.S.*, 149 F.3d 805, 815 (8th Cir.1998) (citations omitted). Only when the statute is unclear or ambiguous should the court consider other sources to ascertain how Congress intended for the statute to be enforced. *Id.*

The chemical excise tax exception claimed by Murphy applies to "any organic taxable chemical while such chemical is part of an intermediate hydrocarbon stream containing one or more organic taxable chemicals." 26 U.S.C. § 4662(b)(10)(A).[13] There is no dispute that the refinery grade propylene produced by Murphy contains an organic taxable chemical (propylene). It is also undisputed that the refinery grade propylene is a hydrocarbon stream containing one or more taxable chemicals (primarily propylene and propane). Therefore, in determining whether the exemption applies to the hydrocarbon stream sold by Murphy as refinery grade propylene, the Court must decide whether it may properly be described as "intermediate."

Although the word "intermediate" is not defined within section 4662(b)(10)(A), subsection (B) does provide some guidance. It states that the isolation or extraction of the organic taxable chemical from the tax exempt, intermediate hydrocarbon stream "shall be treated as a use by the person causing such event," and that "such person shall be treated as the manufacturer." 26 U.S.C. § 4662(b)(10)(B)(i,ii). Therefore, the person who isolates or extracts the taxable organic chemical from a mixture of chemicals becomes the manufacturer of the taxable organic chemical, and it is the manufacturer who is responsible for payment of the excise tax.

This interpretation is further supported by the legislative history. Both the Senate Report and the House Report that accompanied the legislation include the following passage:

> The bill clarifies that the present law treatment of intermediate hydrocarbon streams applies where the stream contains one taxable organic chemical feedstock and one or more nontaxable organic chemicals. Thus the mixed steam

---

12. One of the exceptions contained in subsection (b) provides an exemption for a taxable chemical used in a "qualified fuel substance" which is a substance used "in the manufacture or production of any motor fuel, diesel fuel, aviation fuel, or jet fuel...." § 4662(b)(5). Propylene may be exempt as qualified fuel substance. § 4662(b)(5)(D). The Court does not consider or rule upon the question of whether any of Murphy's sales

were exempt from the chemical excise tax under section 4662(b)(5) or any other section.

13. In order to qualify for the exception, both the buyer and the seller must be registered with the IRS and possess a Form 637 "G" suffix registration number. 26 U.S.C. § 4662(b)(10)(C).

rule is not limited to mixtures containing two or more taxable organic chemical feedstocks. *The term "intermediate hydrocarbon stream" generally means a mixture of organic chemicals which is subject to further distillation or processing in the manufacture of a taxable chemical.*

H.R.Rep. No. 100–795 at 384 (1988)(emphasis added)(Def.'s Mot. Summ. J. Ex. M); S.Rep. No. 100–455 at 405 (1988)(emphasis added)(Def.'s Mot. Summ. J. Ex. N).

The rule of law stated within the statute seems straightforward until one attempts to apply the rule to a situation where the isolation and extraction of the taxable chemical involves a multi-step process. In this case, the process is started by Murphy and sometimes completed by someone else. Both parties could conceivably qualify as the "user" and "manufacturer" under section 4662(b)(10)(B). The question is whether the tax should be paid at the beginning of the process or at its end?

In support of its motion for summary judgment against Murphy, the government submits two reasons why this Court should hold that refinery grade propylene is not an intermediate hydrocarbon stream. First, the amount of propylene contained within the product is fixed by Murphy's processes, and the product sold by Murphy is sufficiently pure so as to be recognized as a grade of propylene and put to use in chemical processes requiring propylene. According to the government, the legislative history of the intermediate hydrocarbon stream exception makes clear that Congress intended to exempt only hydrocarbon streams that *require* further pro-

cessing in the manufacture of a chemical that is subject to the excise tax.

Secondly, the intermediate hydrocarbon exemption acts only to shift liability for the excise tax on refinery grade propylene from Murphy to a buyer who uses the substance to manufacture another taxable chemical. In other words, the tax is supposed to be levied at some point in the stream of commerce. The government's position is that the manner in which the statute was drafted shows a preference for the tax to be imposed upstream.

In support of its motion for summary judgment on this issue, Murphy relies on the expert report prepared for them by Purvin & Gertz and contends that the refinery grade propylene is an "intermediate hydrocarbon stream" when compared to chemical or polymer grade propylene. First, Murphy points out that the great bulk of refinery grade propylene produced in the United States is used in a tax-exempt fuel use, or sold to companies that upgrade the substance into chemical-grade or polymer-grade propylene. The upgraded propylene is used in ways that refinery grade may not be used. Murphy does not dispute that chemical- and polymer-grade propylene are subject to the chemical excise tax.

Second, Murphy contends that there are no industry limits for contaminants in the refinery grade propylene, while there are exacting specifications for chemical- and polymer-grade propylene. Because of the wide disparity in the quality of refinery grade propylene, the purchasers do not commingle their supplies of the substance.[14] Conversely, chemical and poly-

14. The deposition testimony of R.J. (Roy) Spann, designated witness for Chevron Chemical Company, shows that Chevron does commingle all purchases of refinery grade propylene, whatever the source, into two underground storage terminals and moves the substance by pipeline to the facility where it will be used in the manufacture of either cumene or polymer-grade propylene (Def.'s Stat. Undisp. Mat. Facts Ex. 9 at 21).

Nathan C. Jennings, designated witness for Georgia Gulf Corporation, testified at his deposition that Georgia Gulf purchases refinery grade propylene from 20–30 different sources for use at its cumene plant in Pasadena, Texas. All of the refinery grade propylene purchased must meet minimum specifications. Upon receipt from whatever source, the substances are commingled and stored in a large underground storage facility (Def.'s Stat. Undisp. Mat. Facts Ex. 7).

mer grade propylene are considered fungible chemicals.

Third, Murphy argues that refinery grade propylene is priced and sold as two separate components—propylene and propane, as opposed to sales contracts for chemical- or polymer-grade propylene which specify only one price.

■ The Court finds merit in the arguments submitted by both parties; however, the fact remains that Murphy begins the propylene refining process by splitting the C3/C4 stream with the purpose of isolating or extracting the propylene. And, although it was not specifically pointed out by either party, the Court finds it significant that all companies purchasing Murphy's refinery grade propylene do so for the primary purpose of obtaining the contained propylene, not the contained propane. The excise tax exception speaks to the removal, isolation or extraction of an organic taxable chemical like propylene, and the person causing such event is liable for the tax. 26 U.S.C. § 4662(b)(10)(B). As Murphy's splitting process is designed to isolate and extract the propylene content of the C3/C4 stream, Murphy is the manufacturer of propylene and therefore liable for the excise tax. Accordingly, summary judgment should be granted in favor of the United States on this issue.

## C. Taxation of the Refinery Grade Propylene.

■ Having determined that Murphy's sales of the refinery grade propylene are not excepted from the chemical excise tax by section 4662(b)(10), the Court must decide whether the tax should apply to the entire volume of the propylene/propane mix or only the contained propylene.[15] Relying upon *Drummond Coal Co. v. Hodel*, 796 F.2d 503 (D.C.Cir.1986), *cert. denied* in 480 U.S. 941, 107 S.Ct. 1593, 94 L.Ed.2d 782 (1987), the government contends that if a product is a taxable chemical, then the tax should be imposed upon

the entire weight of the stream sold, impurities and all. For its part, Murphy argues that a contained weight rule has been adopted by other courts with respect to impurities found in coal. *See Amoco Prod. Co. v. Southern Ute Indian Tribe*, 526 U.S. 865, 119 S.Ct. 1719, 1723, 144 L.Ed.2d 22 (1999)(finding that coalbed methane gas, although generated by the coalification process and released as coal is mined and brought to the surface, is a substance that is distinct and separate from the coal itself); *A.J. Taft Coal Co. v. U.S.*, 605 F.Supp. 366 (N.D.Ala.1984), *aff'd without op.*, 760 F.2d 279 (11th Cir.1985)(finding that the amount of excess moisture in coal that can reasonably be measured is excluded in determining the tonnage subject to the coal excise tax).

The statute provides that the amount of the chemical excise tax to be imposed shall be determined upon the weight of the taxable chemical. 26 U.S.C. § 4661(b). What is more, the refinery grade propylene is sold pursuant to contracts that specify both the weight of the contained propylene and the contained weight of the non-taxable propane. Therefore, it would not be problematic to determine with specificity the tax to be imposed upon the contained weight of the propylene. Having reviewed the case law and giving the statute its plain meaning, the Court finds that the chemical excise tax should be imposed only upon the contained weight of the propylene, and summary judgment will be granted in favor of Murphy on this issue.

## D. Retroactive Application of the Murphy TAM.

The final issue before the Court is whether the Internal Revenue Service abused its discretion by retroactively enforcing its ruling that Murphy's sales of refinery grade propylene during the applicable time period were not excepted from the chemical excise tax by section 4662(b)(10). When the TAM was issued on May 13, 1996, the applicable statute

---

**15.** Propane is not a taxable chemical under section 4661(b).

provided, "The Secretary may prescribe the extent, if any, to which any ruling or regulation, relating to the internal revenue laws, shall be applied without retroactive effect." 26 U.S.C. 7805(b).[16] Courts have consistently construed this provision to mean that IRS rulings are presumed to apply retroactively, but the Secretary (or Commissioner) is empowered, in his or her discretion, to limit retroactive application of a ruling to the extent necessary to avoid inequitable results. "The Commissioner's action may not be disturbed unless, in the circumstances of this case, the Commissioner abused the discretion...." *See Automobile Club of Mich. v. C.I.R.*, 353 U.S. 180, 184, 77 S.Ct. 707, 710, 1 L.Ed.2d 746 (1957), *rehearing denied* 353 U.S. 989, 77 S.Ct. 1279, 1 L.Ed.2d 1147; *Kahler Corp. v. C.I.R.*, 486 F.2d 1,5 (8th Cir.1973); *Bookwalter v. Brecklein*, 357 F.2d 78, 81–82 (8th Cir.1966).

Murphy asserts that it reasonably relied upon several factors when it made the self-determination that its sales of refinery grade propylene were excepted from the imposition of the chemical excise tax by section 4662(b)(10), including the legislative history of the Superfund Act and the amendments to the statute, the failure of the IRS to assert an interpretation of the statute until years after its enactment, and the industry's understanding as to the definition of an intermediate hydrocarbon stream. Murphy also contends that the IRS was aware that Murphy and others in the industry believed that the refinery grade propylene was an exempt intermediate hydrocarbon stream, and the IRS issued G Suffix Registration numbers on this basis and accepted payments of the tax by the downstream customers.

█ While the Court appreciates the factors that entered into Murphy's decision to claim the intermediate hydrocarbon stream exception for its sales of refinery grade propylene, it must nonetheless rule

against Murphy on this issue. In this case, Murphy did not request or rely upon on any prior ruling issued to it by the IRS with regard to the applicability of the intermediate hydrocarbon stream exception. Furthermore, before the Murphy TAM was issued, there was no settled law regarding the exception. Finally, the Court does not find that the government's denial of the claimed exemption for the applicable tax years results in unequal treatment of similarly situated taxpayers or that the effect would produce an excessively harsh result. Having found that the government's interpretation of section 4662(b)(10) was correct, the Court cannot find that the government abused its discretion when it declined to limit the retroactive enforcement of the chemical excise tax with respect to Murphy's sales of refinery grade propylene. Accordingly, summary judgment will be granted in favor of the government on this issue.

## III. Conclusion

On this issue of whether sales of refinery grade propylene produced by Murphy Oil during the applicable time period are excepted from the chemical excise tax section 4662(b)(10), the Court finds that summary judgment should be and hereby is granted in favor of the defendant, United States of America. In addition, the Court finds no abuse of discretion by the Commissioner with regard to declining Murphy's request for relief from retroactive application of the ruling that section 4662(b)(10) does not operate to except the sales from the imposition of the chemical excise tax. Accordingly, summary judgment should be and hereby is granted in favor of the defendant with respect to the decision to assess the chemical excise taxes for each of the applicable tax years.

However, the amount of the chemical excise taxes owed by Murphy should be calculated only upon the contained weight

---

**16.** The statute was amended by P.L. 104–168, § 1101(a). The amendment applies to regula-  tions enacted on or after July 30, 1996.

of the propylene sold. Therefore, summary judgment should be and hereby is granted in favor of Murphy Oil with respect to this issue. A separate order will be entered concurrently herewith.

IT IS SO ORDERED.