**CHARLEVOIX COUNTRY CLUB, INC., Plaintiff,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Defendant.**

No. 1:99–CV–193.

United States District Court,
W.D. Michigan,
Southern Division.

May 11, 2000.

Jeffrey D. Moss, Shapack, McCullough & Kanter, Bloomfield Hills, MI, Roy C. Hayes, Hayes, Schwarze & Hayes, Charlevoix, MI, for Charlevoix Country Club, Inc., plaintiffs.

Edith A. Landman, Asst. U.S. Atty, U.S. Attorney's Office, Western District of Michigan, Grand Rapids, MI, Stephen T. Lyons, U.S. Department of Justice, Tax Division, Ben Franklin Station, Washington, DC, for Internal Revenue Service, defendants.

### OPINION

MILES, Senior District Judge.

This is an action for the recovery of federal income tax and interest that the

plaintiff, Charlevoix Country Club, Incorporated ("CCC"), alleges the defendant erroneously assessed and collected. The matter is currently before the court on motions for summary judgment filed by both parties (docket nos. 17 and 18). For the following reasons, the court denies CCC's motion, and grants the defendant's motion. Judgment will therefore be entered accordingly against CCC and in favor of the defendant.

## FACTS

Many of the facts have been stipulated, at least for purposes of resolving the pending motions. Most of these stipulated facts are incorporated below.

CCC is a Subchapter S corporation, incorporated in 1987 for the purpose of acquiring and developing an undeveloped parcel of real property into a mixed-use development project. The proposed project consisted of a "first class resort area" golf course, country club, and residential lots, adjacent to or near the golf course and club. Consistent with its plans, CCC acquired real estate located near Charlevoix, Michigan. To date, CCC has made substantial development expenditures in connection with the project, including developing some of the real estate for sale as residential lots, development of a golf course, and construction of a country club and related facilities. Although CCC continues to own both the golf course and country club, it has and continues to sell the residential lots, both to the public and to builders, for construction of residential homes.

CCC has sold golf club memberships, subject to approval, for a fee, both to lot owners and to the public at large. Each person who purchases a membership is also charged an annual fee. The membership permits the purchaser to use the golf course and country club, but does not give the purchaser any ownership rights in CCC.

It is CCC's position, and the defendant has agreed, that the improvements to the golf course and the country club increased, in an undetermined amount, the value of the residential lots. CCC's income tax returns for the years 1993, 1994, and 1995 reflected the gain from the sale of certain of these lots. In keeping its books and records from its inception through 1994, CCC did not allocate its development costs incurred in improving the golf course, the country club, and the lots; instead, the corporation lumped all of the development costs together. However, for the year 1995, CCC allocated the various development costs to the golf course, the country club, and the residential lots.

In computing the basis of each lot sold during the years in issue for purposes of determining the amount of taxable gain to report, CCC used an estimated percentage of gross profit applied to gross sales. The gross profit was determined by taking into consideration the total projected profitability of the project using an appraisal, relevant market data, and the projected anticipated costs. In effect, CCC took some of the costs incurred to develop the country club and golf course and added them to the cost basis of the residential lots. CCC contends, and once again the defendant has agreed, that appraisals which had been performed before the commencement of construction had indicated that it would not be "economically viable" to construct the golf course and country club alone without CCC also selling the adjacent residential lots to the public to absorb a significant portion of the costs incurred in the development of the golf course and country club.

After CCC filed its returns for the years in issue, they were audited by the Internal Revenue Service ("IRS"). Using various records and other information supplied by CCC, the IRS was able to determine the price paid for the land on which the golf course and country club is located, the per lot cost of each residential lot, and the development costs allocable to the country club, the golf course, and the residential lots. Using this information, the IRS changed CCC's method of accounting for

the gain on the sale of each lot. As a result of this change, the IRS determined that the basis used by CCC for each lot should have been less. This resulted in a corresponding increase in the amount of gain reported by CCC from the sale of each residential lot during the years in issue. While CCC agrees that the IRS determination properly reflects the actual costs allocable to the country club, the golf course, and the residential lots, CCC contends that some portion of the costs for the country club and the golf course should be allocated to the residential lots sold.

For the years in issue, CCC reported all of the receipts from the sale of club memberships as income; in other words, it treated the basis of the memberships as zero. In its claim for refund and complaint, CCC now contends that, like the sale of the residential lots, some undetermined portion of the costs incurred to develop the golf course and country club should be allocated as basis to the memberships that were sold during the years in issue. In contrast, the defendant contends that no development costs should be allocated to the basis of the memberships.

CCC unsuccessfully appealed the findings of the examining IRS agent. It subsequently paid the amount of $52,500 to the IRS, as a good faith estimate of the additional tax liability. CCC then filed three claims for refund for the years 1993, 1994, and 1995, and commenced this action.

### ANALYSIS

In its motion, CCC urges the court to enter summary judgment in its favor on the issue of cost allocation. More specifically, CCC argues as follows: (1) the law permits CCC to allocate all or a portion of its development and construction costs for the golf course and country club to the basis of the residential lots contained in the development; (2) the law permits CCC to allocate all or a portion of its development and construction costs of the golf

course and country club to the memberships sold; and (3) CCC should not be required to include the amounts it receives as club initiation fees in gross income. In contrast, in its motion the IRS argues that CCC is not entitled to allocate any portion of its development costs associated with the golf course and the country club to its cost basis in the residential lots and memberships sold during the years in issue because the purchaser of the lot or membership did not acquire an ownership interest in the golf course, country club, or the improvements to those independent assets.[1]

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c) In evaluating a motion for summary judgment, the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party moving for summary judgment bears the burden of establishing the non-existence of any genuine issue of material fact and may satisfy this burden by " 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). While inferences drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106

---

1. The IRS contends, and CCC has not disagreed, that the test used to resolve the question of cost allocation for both the residential lots and the club memberships is the same.

S.Ct. 1348, 89 L.Ed.2d 538 (1986). Only factual disputes which may have an effect on the outcome of a lawsuit under the applicable substantive law are "material." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

Internal Revenue Code ("IRC") § 1001(a) provides as follows:

> **(a) Computation of gain or loss.**— The gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the adjusted basis provided in section 1011 for determining gain, and loss shall be the excess of the adjusted basis provided in such section for determining loss over the amount realized.

IRC § 1011(a) provides, in pertinent part, as follows:

> **(a) General rule.**—The adjusted basis for determining the gain or loss from the sale or other disposition of property, whenever acquired, shall be the basis (*determined under section 1012 . . .*), adjusted as provided in section 1016.

None of the adjustments enumerated in IRC § 1016 are applicable to the facts of this case.[2] IRC § 1012 provides that "[t]he basis of property shall be the cost of such property[.]" Thus, under the applicable law the adjusted basis for determining gain or loss on the sale of property— including each of the residential lots and memberships sold—is its cost. Here, the parties have stipulated that the IRS properly determined the actual costs allocable to the country club, the golf course, and the residential lots, respectively.

 A taxpayer who seeks a deduction bears the burden of demonstrating an entitlement to that deduction. *New Colonial Ice Co. v. Helvering,* 292 U.S. 435, 440, 54 S.Ct. 788, 78 L.Ed. 1348 (1934). A deduction depends on legislative grace, and only where the law clearly provides for it can any particular deduction be allowed. *Lenkin v. District of Columbia,* 461 F.2d 1215, 1225 (D.C.Cir.1972); *see also United States v. Wells Fargo Bank,*

485 U.S. 351, 354, 108 S.Ct. 1179, 99 L.Ed.2d 368 (1988) ("exemptions from taxation are not to be implied; they must be unambiguously proved"). The issue presented here is whether CCC may deduct some or all of the costs associated with the development of the golf course and country club as part of the cost basis of the lots it developed and sold.

Relying on what has been termed the "developer line of cases." *see generally Norwest Corp. & Subsidiaries v. Commissioner of Internal Revenue,* 111 T.C. 105, 131–135, 1998 WL 460322 (1998), CCC argues that allocation of a portion of the costs of development of the golf course and country club to the individual residential lots is supported by law. As summarized in *Norwest,*

> The developer line of cases addresses the basic problem of what constitutes a proper adjustment to the basis of property in the context of a common improvement that benefits lots in a residential subdivision. Those cases focus on the common improvement and not directly on the lots held for sale. If an analysis of the common improvement indicates that (1) the basic purpose of the taxpayer in constructing the common improvement is to induce sales of the lots and (2) the taxpayer does not retain too much ownership and control of the common improvement, then the lots held for sale are deemed to include the allocable share of the cost of the common improvement. The rationale of the developer line of cases is that, when the basic purpose of property is the enhancement of other properties to induce their sale and such property does not have, in substance, an independent existence, total cost recovery for such property should be dependent on sale of the benefited properties. . . .

*Id.* at 134–135, 1998 WL 460322.

 "The requirement that the basic purpose of a taxpayer in constructing a

---

**2.** IRC § 1016(a) provides, in pertinent part, that "[p]roper adjustment in respect of the property shall in all cases be made ... for expenditures ... properly chargeable to capital account[.]"

common improvement be to induce sales of benefited properties serves the purpose of justifying *total* cost recovery of the common improvement based on sales of the benefited properties." *Id.* at 135, 1998 WL 460322. Here, the court assumes, for purposes of deciding this motion, that CCC constructed the golf course and country club for the sole purpose of improving the salability of the residential lots contained within the development. However, even assuming the existence of such a purpose, the stipulated fact remains that CCC has not transferred any ownership interest whatsoever in the golf course or country club; instead, it has sold to others merely a right to use these properties. Thus, these two assets, which include the costs incurred to improve them, have in substance an existence—whether deemed recreational, social[3], or financial in nature—independent of the residential lots and the memberships. Under the circumstances, the law will not countenance the allocation of costs which CCC seeks.

It is not uncommon for developers to incur costs for other land and improvements such as water and sewage systems, roadways, recreation areas and the like for the benefit of the development as a whole. Where the developer either dedicates such facilities for general use or transfers such facilities to the purchasers of the individual properties within the development for the purpose of inducing customers to buy such properties, such expenditures become a part of the cost of the properties to be sold. On the other hand, where the developer does not dedicate such facilities to the exclusive use of the property owners, but instead elects to make the facilities a commercial venture in and of itself, the cost of the facilities does not become a part of the basis of each property sold. *Lakeside Garden Developers, Inc. v. Commissioner of Internal Revenue,* 35 T.C.M. (CCH) 1294 (1976) (citations omitted), *affirmed,* 601 F.2d 892 (5th Cir.1979). Al-

though CCC may have constructed the golf course and country club for the sole purpose of improving the salability of the residential lots, the fact remains that it retains "complete control over their future use and development," and, by virtue of this complete control, the rights retained by CCC preclude inclusion of the costs associated with the development of the golf course and country club in the basis of the residential lots. *Id.* The developer line of cases simply does not support CCC's request for an exception to the general rule that each asset has its own cost basis—at least not under the undisputed facts which have been presented to the court.

### CONCLUSION

For the foregoing reasons, the court denies plaintiff's motion for summary judgment, and grants the defendant's motion for summary judgment. The court will enter judgment accordingly.

---

**3.** The stipulated facts specifically indicate that CCC sold memberships "subject to approval."

Stipulated Facts. ¶ 5.